1999 ND 68

**Shirley J. FOX, Plaintiff, Appellee and Cross–Appellant,**

v.

**Abe L. FOX, Defendant, Appellant and Cross–Appellee.**

No. 980198.

Supreme Court of North Dakota.

April 12, 1999.

Patricia E. Garrity, of Bair, Bair & Garrity, LLP, Mandan, N.D., for plaintiff, appellee and cross-appellant.

Orell D. Schmitz, of Schmitz, Moench & Schmidt, Bismarck, N.D., for defendant, appellant and cross-appellee.

SANDSTROM, Justice.

[¶ 1] Abe L. Fox appealed from a judgment granting him and Shirley J. Fox a divorce, claiming the trial court erred in valuing and dividing their marital property. Shirley Fox cross-appealed from the judgment, claiming the trial court erred in failing to award her cash spousal support. We conclude the trial court erroneously valued the parties' marital estate. We reverse and remand for the trial court to revalue the marital property, and to reconsider the distribution and Shirley Fox's request for cash spousal support.

I

[¶ 2] Abe Fox and Shirley Fox were married in 1965 and have two adult children. Abe Fox was a physician who worked as a pathologist during most of the marriage. In 1994 he became disabled. Abe Fox, who was 60 at the time of trial, receives disability payments of $17,200 per month until he turns 65. Shirley Fox, who was 59 at the time of trial, completed two-and-one-half years of college during the marriage but did not earn a degree. She has not worked outside of the home since 1966. According to Shirley Fox, Abe Fox recently became aggressive and angry, and began irrationally handling financial matters. In 1997, after 32 years of marriage, she brought this divorce action.

[¶ 3] The trial court valued the parties' marital property at almost $4 million, awarding Shirley Fox $1,823,747 in property and Abe Fox $2,032,093 in property. The court treated Abe Fox's future disability payments as marital property and valued them at $1,032,000, representing the total payments he will have received from January 1998 until he turns 65. He was awarded the disability payments as part of his property distribution. The court valued the parties' home at $295,000 and awarded it to Shirley Fox. In the event she sells the home, the court awarded him 50 percent of the equity from the sale. He was also ordered to "pay the mortgage payments, real estate taxes, special assessments, insurance on the house, utilities, and any necessary home repairs and maintenance."

[¶ 4] The trial court did not include in the parties' marital property, or assign a value to, a self-sustaining irrevocable life insurance trust created by Abe Fox, under which Shirley Fox serves as trustee for the benefit of the family. The court refused to place a value on the trust and include it in the marital estate, reasoning there was no "competent evidence on which I can base a value for the trust in terms of a distribution of property that will be meaningful or fair to both sides." The court also denied Shirley Fox's request for a cash award of spousal support. The court reasoned, given the property distribution, the "evidence does not support requiring Abe to pay spousal support to Shirley in order for her to maintain her standard of living or to support herself."

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The parties' appeals are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] Upon granting a divorce, the trial court is required by N.D.C.C. § 14–05–24 to make an equitable distribution of the marital estate. *Gibbon v. Gibbon*, 1997 ND 210, ¶ 6, 569 N.W.2d 707. All of the real and personal property accumulated by the parties, regardless of the source, must be included in the marital estate. *Gaulrapp v. Gaulrapp*, 510 N.W.2d 620, 621 (N.D.1994). There is no set formula for dividing a marital estate, but the trial court must equitably divide the property, based upon the circumstances of the particular case. *Nelson v. Nelson*, 1998 ND 176, ¶ 6, 584 N.W.2d 527.

[¶ 7] A property distribution need not be equal to be equitable, but a substantial disparity must be explained. *Fisher v. Fisher*, 1997 ND 176, ¶ 15, 568 N.W.2d 728. A

homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution, *Young v. Young,* 1998 ND 83, ¶ 15, 578 N.W.2d 111, and a lengthy marriage generally supports an equal division of all marital assets. *Glander v. Glander,* 1997 ND 192, ¶ 11, 569 N.W.2d 262. The court's valuation and division of property are findings of fact and will not be reversed on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *Wilhelm v. Wilhelm,* 1998 ND 140, ¶ 11, 582 N.W.2d 6. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Keller v. Keller,* 1998 ND 179, ¶ 10, 584 N.W.2d 509.

### A

[¶ 8] Abe Fox argues the trial court erred in including his future disability payments as part of the couple's marital property. He claims when the erroneously-included $1,032,000 is subtracted from his part of the property distribution, there is a substantial disparity in the property division, which the trial court failed to explain. Shirley Fox agrees the trial court erroneously labeled the disability payments as property, but contends removing them from the property distribution nevertheless results in an equitable division that was adequately explained by the trial court.

[¶ 9] The trial court's inclusion of Abe Fox's $1,032,000 in future disability payments as marital property subject to distribution is clearly erroneous because it was induced by an erroneous view of the law. Although pensions and retirement benefits are marital assets subject to equitable distribution by the court, *see Nelson,* 1998 ND 176, ¶ 7, 584 N.W.2d 527, disability payments do not constitute marital property, because they are intended as replacement for income the disabled spouse would be earning currently and would be able to earn in the future had the spouse not become disabled. *See, e.g., Moore v. Moore,* 710 A.2d 633, 635 (Pa.Super.1998); *Allard v. Allard,* 708 A.2d

554, 557 (R.I.1998); *Tinsley v. Tinsley,* 326 S.C. 374, 483 S.E.2d 198, 202 (App.1997). Disability payments resemble social security payments, *see Tinsley,* which this Court has ruled are not marital property subject to equitable distribution. *See Kluck v. Kluck,* 1997 ND 41, ¶ 32, 561 N.W.2d 263; *Olson v. Olson,* 445 N.W.2d 1, 11 (N.D.1989). *Compare Vitko v. Vitko,* 524 N.W.2d 102, 104 (N.D.1994) (holding forthcoming military disability payments are not marital property). Rather, disability payments are income which may nevertheless be considered in determining the ultimate economic circumstances of the parties in a divorce. *See Knoop v. Knoop,* 542 N.W.2d 114, 118 (N.D. 1996); *Vitko; Olson,* 445 N.W.2d at 14–15 (VandeWalle, J., concurring in result).

[¶ 10] Shirley Fox claims this error is harmless because the *Ruff–Fischer* guidelines combine concepts of marital property and income and are to be used both in making an equitable distribution of property and in awarding spousal support. *See, e.g., Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 25, 574 N.W.2d 790. According to Shirley Fox, most of the assets given to her in the property distribution are not income-producing assets, and when all other facets of the property distribution and the parties' incomes are considered together, the distribution is fair and equitable.

[¶ 11] The trial court's error was substantial, adding more than $1 million to Abe Fox's side of the property distribution ledger; and, as we explain later, the trial court made other errors in valuing and distributing the parties' marital property. Under these circumstances, we are unconvinced the trial court would have made the same division of property even if it had not considered the future disability payments as part of the marital estate.

### B

[¶ 12] Abe Fox argues the trial court erred in failing to assign a value to an irrevocable life insurance trust he established as part of the couple's estate plan. Shirley Fox is trustee, and the trust corpus consists of life insurance policies on Abe Fox's life with death benefits totaling $814,969 and a cash

value totaling $290,000 at the time of trial. Because the trust corpus consists of life insurance policies, the trust is not expected to initially generate any income. Nevertheless, Shirley Fox is given the right to receive all net income in regular installments from the trust during her lifetime. She also has the right during her lifetime to withdraw the principal in an amount not to exceed the greater of $5,000 or 5 percent of the value of the principal determined at the end of each calendar year. Although she has the right to cash in the life insurance policies and invest the $290,000 to generate income, she testified she had no plans to do so. Consequently, the trust is not currently generating any income, and unless she changes her mind, the trust will not generate any income until Abe Fox dies.

[¶ 13] Abe Fox argued to the trial court the trust should be valued at its present cash value of $290,000. Shirley Fox argued no value should be assigned to the trust or, in the alternative, the trust should be assigned a value representing the present value of her right to withdrawal upon Abe Fox's death. Her certified public accountant testified the present value of that right was $50,000. The trial court placed no value on the trust, reasoning:

> It is undisputed that the cash value of the insurance policies that are the corpus of the trust totals $290,000 and that the death benefit of the policies is $814,969. Shirley can never get either of these amounts though. Even if she were to cause the insurance policies to be cashed in, she would only be entitled to the income of the investments made with the cash, plus a withdrawal of 5% or $5,000 per year. Upon Abe's death, Shirley is not entitled to the entire death benefit, but only the income and $5,000 or 5% of the princip[al] of the trust each year. Income from the trust in either instance is speculative at best, first because Shirley may or may not cash out the insurance policies and because there is no guaranteed return on investments. Even the valuation given the asset by [her certified public accountant] ($50,-000) is based on an assumed life expectancy and an assumed rate of return. I do not have competent evidence on which I

can base a value for the trust in terms of a distribution of property that will be meaningful or fair to both sides. This is not due to lack of effort by counsel; there just is simply no way to give the trust a value that will not prejudice one side or the other due to the nature of the trust.

[¶ 14] Generally, trusts are includable as marital property subject to equitable distribution by the trial court. *See Herrick v. Herrick*, 316 N.W.2d 72, 74 (N.D.1982). However, this Court has also held when receipt of future benefits is too speculative, the potential benefits should not be valued as assets in the marital estate. *See, e.g., Kluck*, 1997 ND 41, ¶ 28, 561 N.W.2d 263; *Heggen v. Heggen*, 452 N.W.2d 96, 101 (N.D.1990); *Fries v. Fries*, 288 N.W.2d 77, 81 (N.D.1980). In *van Oosting v. van Oosting*, 521 N.W.2d 93, 97–98 (N.D.1994), we noted the difficulties in valuing an interest in a trust are comparable to those encountered when valuing a pension, because the interest in a pension is contingent upon the worker reaching retirement. We held, like pensions and retirement plans, trusts may be divided at the time of divorce either by awarding the present value of the benefits or, when there are insufficient assets for a present division or when present valuation is too speculative, by awarding a percentage of future payments. *van Oosting; see also Zuger v. Zuger*, 1997 ND 97, ¶¶ 12, 15, 563 N.W.2d 804.

[¶ 15] In this case, we conclude the trial court's failure to place any value on Shirley Fox's interest in the trust is not supported by the evidence in the record and is clearly erroneous. We recognize there are various contingencies involved in her actually receiving income from the trust, but some of those contingencies are within her control. Although dividing the ultimate payments is not an option available here as it was in *Zuger* and *van Oosting*, her own witness, a certified public accountant, was able to place a $50,000 present value on her interest in the trust. The trial court's apparent pessimism over the accountant's use of "an assumed life expectancy and an assumed rate of return" in arriving at his calculation is puzzling because those "assumed" factors are often used in

calculating present value. *See, e.g., Welder v. Welder*, 520 N.W.2d 813, 815 (N.D.1994); *Steckler v. Steckler*, 519 N.W.2d 23, 26 (N.D. 1994). Given her ability to control whether she receives income from the trust and her relatively better health when compared with Abe Fox's health, the only truly speculative scenario is the trial court's finding Shirley Fox's interest in the trust has absolutely no value. We therefore remand to the trial court to place an appropriate value on Shirley Fox's interest in the trust for inclusion in the marital estate.

### C

[¶ 16] The trial court awarded the parties' home, valued at $295,000, to Shirley Fox and awarded Abe Fox one-half of the equity if she decides to sell it. In the interim, the court ordered him to "pay the mortgage payments, real estate taxes, special assessments, insurance on the house, utilities, and any necessary home repairs and maintenance." He argues the court's requirement he pay all expenses on the house and receive one-half the proceeds of the sale is clearly erroneous because it establishes a continuing partnership between him and Shirley Fox, from which he is unable to extricate himself. She argues the home expense payments are actually "de facto spousal support," but also objects to this condition because she believes it will cause continuing disputes and litigation between the parties.

[¶ 17] In distributing marital property, a court should try to disentangle the parties' financial affairs to reduce further conflict, litigation, and rancor between them. *See Fisher*, 1997 ND 176, ¶ 26, 568 N.W.2d 728; *Heggen v. Heggen*, 541 N.W.2d 463, 465 (N.D.1996). Here, one of the major reasons for the parties' divorce was disagreement over financial matters. The provision in the divorce decree requiring him to pay for "necessary home repairs and maintenance" while she resides in the house can only lead to further conflict. We are left with a definite and firm conviction the trial court made a mistake in ordering Abe Fox to continue to pay expenses associated with the parties' marital home.

[¶ 18] Because of the errors in the valuation and extent of the parties' marital property, we reverse and remand for the trial court to revalue the disputed marital property and reconsider its distribution.

### III

[¶ 19] In her cross-appeal, Shirley Fox argues the trial court erred in failing to award her cash spousal support. The court denied her request for spousal support, reasoning because of the property division the "evidence does not support requiring Abe to pay spousal support to Shirley in order for her to maintain her standard of living or to support herself."

[¶ 20] In determining the spousal support issue, it is appropriate for the trial court to consider the standard of living of the parties in a long-term marriage and the need to balance the burden created by the separation when it is impossible to maintain two households at the pre-divorce standard of living. *Donarski v. Donarski*, 1998 ND 128, ¶ 6, 581 N.W.2d 130. There are two types of spousal support. Permanent spousal support is appropriate to provide traditional maintenance for a spouse who is incapable of rehabilitation. *Heley v. Heley*, 506 N.W.2d 715, 719 (N.D.1993). Permanent spousal support is not limited to a spouse who is incapable of any rehabilitation, but may be awarded to a spouse incapable of adequate rehabilitation or self support. *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D.1994). Rehabilitative spousal support, on the other hand, is awarded to provide a disadvantaged spouse time and resources to acquire an education, training, work skills, or experience that will enable the spouse to be self supporting. *Schmitz v. Schmitz*, 1998 ND 203, ¶ 16, 586 N.W.2d 490. We have adopted the "equitable doctrine" of rehabilitative spousal support where its purpose is not limited to assisting a disadvantaged spouse in achieving educational goals, but includes enabling a disadvantaged spouse to achieve suitable and appropriate self support. *Gierke v. Gierke*, 1998 ND 100, ¶ 22, 578 N.W.2d 522.

[¶ 21] We prefer rehabilitative over permanent spousal support. *Neppel v. Neppel*, 528 N.W.2d 371, 374 (N.D.1995).

Rehabilitative spousal support is preferred in cases in which the disadvantaged spouse will be able to retrain to independent economic status. *Schmitz*, 1998 ND 203, ¶ 16, 586 N.W.2d 490. Nevertheless, when there is substantial disparity between the spouses' incomes that cannot be readily adjusted by property division or rehabilitative support, it may be appropriate for the court to award indefinite permanent support to maintain the disadvantaged spouse. *Glander*, 1997 ND 192, ¶¶ 17–18, 569 N.W.2d 262. The award of permanent spousal support is also appropriate to attempt to provide an equitable sharing of the overall reduction in the parties' separate standards of living when one spouse has contributed to the earning capacity of the other to the detriment of that spouse's own earning capacity. *Neppel*, 528 N.W.2d at 374. We have even encouraged trial courts which find no immediate need for awarding permanent spousal support to retain jurisdiction to do so beyond a temporary award when facing uncertainty about the need for permanent support. *van Oosting*, 521 N.W.2d at 101.

[¶ 22] Questions of property division and spousal support cannot be considered separately or in a vacuum, but must be examined and dealt with together, especially when there is a large difference in earning power between the spouses. *Schmaltz v. Schmaltz*, 1998 ND 212, ¶ 17, 586 N.W.2d 852. A trial court's decision on spousal support is treated as a finding of fact and is subject to the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 13, 563 N.W.2d 377.

[¶ 23] Shirley Fox presented a compelling case for spousal support. The parties were married for 32 years. She was a homemaker during the marriage and stayed home with the couple's children. She has not worked outside of the home since 1966. Although she attended college for some time during the marriage, she did not earn a degree. She testified if she re-entered the job market she might be able to find work as a phlebotomist, or she could "sell clothes" or "do some kind of a service job." However, at 59, and having not been employed outside of the home since 1966, her entry into the job market may be difficult. *See Heley*, 506 N.W.2d at 720. Her needs must be measured against his needs and ability to pay. *Weir v. Weir*, 374 N.W.2d 858, 865 (N.D. 1985). He was a physician specializing in pathology. Since having become disabled, he receives disability income totaling $17,200 per month and will continue to receive it until he is 65. He did not testify about extraordinary expenses necessitated by his condition. Under these circumstances, Shirley Fox clearly qualifies as a disadvantaged spouse, and considering her needs and Abe Fox's needs and ability to pay, she is a candidate for some form of spousal support.

[¶ 24] The trial court apparently found no need to award Shirley Fox spousal support, because she was adequately provided for by her share of the property distribution. We have often said, however, a disadvantaged spouse is not required to deplete her property distribution in order to live. *See, e.g., Bakes v. Bakes*, 532 N.W.2d 666, 669 (N.D.1995). Because we reverse and remand for the trial court to revalue the marital property and reconsider the property distribution, and because matters of property division and spousal support should be considered together, we direct the court to reconsider Shirley Fox's request for cash spousal support.

## IV

[¶ 25] We reverse the divorce judgment and remand to the trial court to revalue the marital property, and to reconsider the property distribution and Shirley Fox's request for cash spousal support.

[¶ 26] VANDE WALLE, C.J., NEUMANN, MARING and BRUCE E. BOHLMAN, D.J., concur.

[¶ 27] BRUCE E. BOHLMAN, D. J., sitting in place of KAPSNER, J., disqualified.