2003 ND 77

**Dennis SOMMERS, Plaintiff
and Appellee**

**v.**

**Nancy SOMMERS, Defendant
and Appellant.**

**No. 20020149.**

Supreme Court of North Dakota.

May 6, 2003.

Rehearing Denied June 3, 2003.

Irvin B. Nodland, Irvin B. Nodland, Bismarck, ND, for plaintiff and appellee.

Sherry Mills Moore, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Nancy Sommers appealed the judgment entered in a divorce action brought by Dennis Sommers. We conclude the trial court erred in valuing Dennis Sommers' orthodontic practice and, therefore, the court's property distribution is clearly erroneous. We reverse the judgment in part, affirm in part, and remand for further proceedings.

[¶ 2] The parties married in 1975, while Dennis was in orthodontic school. Dennis has practiced orthodontics in Minot since 1977. Nancy worked in Dennis' office until the day before the birth of their first child. Nancy did not work outside the home after the birth of the parties' children in 1980 and 1984. The parties separated in 1998, and Dennis sued for divorce in 2000.

[¶ 3] The parties agreed their property should be divided equally. The trial court rejected Nancy's $800,000 going concern valuation of Dennis' orthodontic practice and accepted Dennis' $168,000 liquidation valuation. The trial court awarded each party property with a net value of $1,259,766, in accordance with property distribution requests by Dennis. The judgment required Dennis to pay Nancy rehabilitative spousal support of $14,000 per month through May 2002, followed by $15,418 per month for 48 months, and $6,000 per month for 72 months.

[¶ 4] Nancy appealed, contending the trial court erred in valuing Dennis' orthodontic practice at its liquidation value rather than at its value as a going concern, in failing to award her permanent spousal support, and in reducing spousal support to $6,000 per month after four years. Dennis moved to dismiss the appeal because Nancy accepted benefits of the divorce decree.

I

[¶ 5] Dennis asserts the appeal should be dismissed because Nancy waived her right to appeal by conscious, unconditional and voluntary acceptance of benefits awarded in the divorce decree and "[t]he property received was not property to which [she] was entitled but for the divorce."

The general rule is that one who accepts a substantial benefit of a divorce judgment waives the right to appeal from the judgment. This court has sharply limited the rule in domestic cases to promote a strong policy in favor of reaching the merits of an appeal. Before a waiver of the right to appeal can be found, there must be an unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment. The party objecting to the appeal has the burden of showing the benefit accepted by the appealing party is one which the party would not be entitled to without the decree. There must be unusual circumstances, demonstrating prejudice to the movant, or a very clear intent on the part of the appealing party to accept the judgment and waive the right to appeal, to keep this court from reaching the merits of the appeal.

Wetzel v. Wetzel, 1999 ND 29, ¶ 5, 589 N.W.2d 889 (citations omitted). A party moving to dismiss an appeal must clearly establish waiver of the right to appeal by the other party. Smith v. Smith, 534 N.W.2d 6, 8 (N.D.1995).

[¶ 6] In dividing the parties' marital property in a divorce action, the trial court normally starts with an equal distribution of the property. Corbett v. Corbett, 2002 ND 103, ¶ 18, 646 N.W.2d 677. The parties agreed their marital property should be equally distributed. The trial court awarded Nancy one-half of the property as the court valued it. Den-

nis has not argued Nancy should have received less property. If the trial court erred in undervaluing Dennis' orthodontic practice, Nancy will be entitled to more, not less, property. A spousal support recipient's acceptance of spousal support payments is not a waiver of the right to appeal a judgment and is not inconsistent with a claim on appeal that he or she should have been awarded more support. Mahoney v. Mahoney, 1997 ND 149, ¶ 37 n. 4, 567 N.W.2d 206; Smith, 534 N.W.2d at 8. Nancy contends she is entitled to more spousal support; Dennis has not contended she is entitled to less. We conclude Dennis has not clearly established Nancy waived her right to appeal by accepting benefits of the divorce judgment, and we deny his motion to dismiss Nancy's appeal.

II

[¶ 7] The trial court rejected Nancy's expert's $800,000 valuation of Dennis' orthodontic practice as a going concern, including goodwill and intangible assets. The court accepted Dennis' expert's $168,000 liquidation valuation, based upon the expert's view there were no probable buyers for the practice; the probable retail value of equipment in place if the assets were sold; contracts in progress would sell for about half their net value; and the tax effects of a sale of the assets. Nancy contends the trial court erred in valuing the orthodontic practice at its liquidation value, and should have used its value as a going concern.

[¶ 8] Under N.D.C.C. § 14–05–24, the trial court in a divorce case must equitably distribute the marital property. Kluck v. Kluck, 1997 ND 41, ¶ 25, 561 N.W.2d 263. A property "distribution need not be equal to be equitable, but the trial court must explain a substantial disparity." Johnson v. Johnson, 2002 ND

151, ¶ 18, 652 N.W.2d 315. "A trial court's valuation of property is a finding of fact that is presumptively correct and subject to the clearly erroneous standard of review." *Hoverson v. Hoverson,* 2001 ND 124, ¶ 13, 629 N.W.2d 573.

[¶ 9] "[I]n valuing a professional corporation, the trial court must include 'at a *minimum* the interest in the office equipment, furniture, fixtures, and the accounts receivable.'" *Kluck,* 1997 ND 41, ¶ 36, 561 N.W.2d 263 (quoting *Bard v. Bard,* 380 N.W.2d 342, 344 (N.D.1986)). "The goodwill of a business is the expectation of continued public patronage," N.D.C.C. § 47–07–10, and is transferable, N.D.C.C. § 47–07–11. We have indicated that the goodwill of a divorcing party's business interests may be considered in valuing the parties' marital property. *See Nastrom v. Nastrom,* 262 N.W.2d 487, 493 (N.D.1978) (determination that a party's earning power or entrepreneurial skill is not property should not "be taken as an indication that the goodwill of [a party's] *business interests* should not be considered in determining the value of the parties' property").

[¶ 10] "While liquidation value, rather than fair market value, may be appropriate under certain circumstances involving distressed conditions," *Heggen v. Heggen,* 452 N.W.2d 96, 99 (N.D.1990), "liquidation value is the least favored method of valuing any type of marital property in a divorce," *Welder v. Welder,* 520 N.W.2d 813, 817 (N.D.1994). "Ordinarily, fair market value, not 'liquidation value,' is the proper method of valuing property in a divorce." *Heggen,* at 99. "Fair market value is the price a buyer is willing to pay and the seller is willing to accept under circumstances that do not amount to coercion." *Id.*

[¶ 11] In *Kaiser v. Kaiser,* 474 N.W.2d 63, 69 (N.D.1991), we held that in valuing a company that is not going to be liquidated, "expenses that would only be incurred if the assets were liquidated" should not be deducted. We also said potential taxes should be considered in valuing marital assets in only limited circumstances and theoretical tax liabilities that are not going to be incurred because there is not going to be a liquidation should not be deducted. *Id.* at 69–70. *See also Welder v. Welder,* 520 N.W.2d 813, 817 (N.D.1994) (stating the trial court should not have considered "the income tax consequences of a withdrawal of [retirement] funds from the pension plans when the parties had no current intentions to withdraw those funds").

[¶ 12] The trial court asked Dennis: "[H]ave you decided or determined in your own mind when you wanted to leave your practice, in other words, retire?" Dennis responded: "I enjoy what I do very much and my hope is that I can continue to work until I can't do it anymore, but I can't maintain the same schedule." Dennis was not contemplating liquidating his orthodontic practice anytime soon. The trial court's valuation of Dennis' orthodontic practice at its liquidation value when no evidence indicated liquidation was contemplated or required by the circumstances is clearly erroneous. We, therefore, reverse and remand for redetermination of the property distribution, based upon valuation of Dennis' orthodontic practice at its fair market value.

III

[¶ 13] Nancy contends the trial court erred in failing to award her permanent spousal support and in reducing her spousal support to $6,000 per month after four years.

[¶ 14] The judgment contains the following findings relevant to this issue:

#### 4.

Both parties are 51 years of age. Both parties are in fairly good health. Dennis is receiving skin cancer treatments. Nancy suffers from depression, anxiety, insomnia, high blood pressure, hormonal imbalance and thyroid deficiency.

. . . .

#### 6.

Dennis is an orthodontist with significant earning ability. Nancy is not employed outside the home.

Nancy earns about $1,000 a year as a member of the Minot School Board. Because of Dennis' significant earning ability, the parties' standard of living has been very high. The parties have significant disposable monthly income.

#### 7.

Nancy has a BA in Psychology from Minot State University. She obtained this degree 20 years ago. Exhibit No. 108, admitted at trial, shows her education and her involvement in the Minot community. She is, by all accounts, intelligent, talented, organized and well connected to the social, educational, professional, and financial community in Minot.

#### 8.

The Court considers this a long-term marriage. Nancy is a disadvantaged spouse in that she gave up career opportunities in order to assist Dennis in starting his orthodontic practice and by staying at home after the children were born. . . . She has not been employed in recent years. She is in need of rehabilitative spousal support. Given her abilities she is capable of rehabilitation. . . .

It will take Nancy some time to get back into the work force. Being well connected is one thing, getting a job is another. She has not been to school in 20 years. What type of work she can find is a real question. She will need some kind of training, schooling, to get back into the work force. When she does get back into the work force, more than likely her earning ability will not be as great as Dennis'. Considering her age, the length of time she will be in the work force, will not be very long.

#### 9.

During the period August 1998 when the parties separated to January 2002 the month prior to trial a period of 43 months, Dennis paid Nancy $662,960 for spousal and child support. This averages out to $15,417.67 per month. This is an amount Dennis can afford. Nancy has been able to live quite well on that figure.

#### 10.

. . . Dennis shall pay Nancy the sum of $14,000 per month for the months of February through May 2002. Commencing in June of 2002, Dennis . . . shall pay $15,418.00 spousal support per month to Nancy for a period of 48 months. Thereafter and for a period of an additional 72 months, Dennis shall pay Nancy $6,000 per month as spousal support at which time spousal support shall cease. Along with the spousal support she will receive hereunder, the significant assets she will receive, and her own employment, Nancy should be able to live quite well for the rest of her life.

[¶ 15] Under N.D.C.C. § 14–05–24.1, a trial court in a divorce case "may require one party to pay spousal support to the other party for any period of time." A determination on spousal sup-

port is treated as a finding of fact which will not be set aside on appeal unless clearly erroneous. *Shields v. Shields*, 2003 ND 16, ¶ 6, 656 N.W.2d 712. The trial court may consider the standard of living of the parties in a long-term marriage and the need to balance the burden created by the separation when it is impossible to maintain two households at the pre-divorce standard of living. *Fox v. Fox*, 1999 ND 68, ¶ 20, 592 N.W.2d 541. Questions of property division and spousal support cannot be considered separately or in a vacuum, but ordinarily must be examined and dealt with together, especially when there is a large difference in earning power between the spouses. *Id.* at ¶ 22. A disadvantaged spouse is not required to deplete a property distribution in order to live. *Id.* at ¶ 24. "Spousal support awards must be made in consideration of the disadvantaged spouse's needs and of the supporting spouse's needs and ability to pay." *Shields*, at ¶ 10.

[¶ 16] We addressed permanent and rehabilitative spousal support at some length in *Sommer v. Sommer*, 2001 ND 191, ¶ 14, 636 N.W.2d 423 (citations omitted):

We recognize permanent spousal support and rehabilitative spousal support as two distinct remedies. Permanent spousal support is generally appropriate when the disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities lost in the course of the marriage. Furthermore, permanent spousal support may be awarded "where the marriage has been of long duration and the dependent spouse has health problems or is of such an age that adequate rehabilitation is unlikely." In contrast, rehabilitative spousal support is appropriate "when it is possible to restore an economically disadvantaged spouse to independent economic status

or to equalize the burden of divorce by increasing the disadvantaged spouse's earning capacity." However, even when the disadvantaged spouse is capable of rehabilitation, our Court has recognized permanent spousal support as an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living.

" 'Equitable' rehabilitative support goes further than minimal self-sufficiency; it aims to mitigate marital disadvantage caused by the impact at divorce of an economic role assumed during marriage." *Riehl v. Riehl*, 1999 ND 107, ¶ 15, 595 N.W.2d 10.

[¶ 17] When justified by the facts, rehabilitative support is preferred over permanent spousal support. *Fox*, 1999 ND 68, ¶ 21, 592 N.W.2d 541. "Nevertheless, when there is substantial disparity between the spouse's incomes that cannot be readily adjusted by property division or rehabilitative support, it may be appropriate for the court to award indefinite permanent support to maintain the disadvantaged spouse." *Id.* While we have not endorsed the equalization of income between divorcing spouses as a measure of spousal support, *Riehl*, 1999 ND 107, ¶ 17, 595 N.W.2d 10, a difference in earning power is a proper factor for consideration in prescribing spousal support, *Pfliger v. Pfliger*, 461 N.W.2d 432, 436 (N.D.1990).

[¶ 18] In light of the assets available for division in this case, Dennis' great earning ability, Nancy's absence from the workforce for over 20 years, the relatively short period of time between Nancy's reentry into the workforce and reaching retirement age, the high standard of living the parties enjoyed during their marriage, the great disparity in the parties' earning abilities, and the fact that Nancy's earning ability is unlikely to ever approach Den-

nis', the trial court would not have erred in awarding permanent spousal support or rehabilitative support without reduction to $6,000 per month after four years. *Fox*, at ¶ 21. However, for the reasons stated by the trial court, we conclude that the trial court's spousal support determinations are not clearly erroneous. The trial court found that Nancy is capable of rehabilitation and that finding is supported by the record. As N.D.C.C. § 14–05–24.1 provides a court may modify its spousal support orders, the order could be modified if subsequent events justify an amendment.

[¶ 19] Although we do not find the trial court's spousal support determinations to be clearly erroneous, under our law, because we are remanding for redetermination of the property distribution, the trial court may reconsider its spousal support determinations. *Fox v. Fox*, 1999 ND 68, ¶ 22, 592 N.W.2d 541.

### IV

[¶ 20] The property distribution in the judgment is reversed and the matter is remanded for redetermination upon revaluation of Dennis' orthodontic practice. The judgment is otherwise affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.

I concur in the result. Dale V. Sandstrom, J.