2003 ND 135

**Lynn D. MONTGOMERY, Plaintiff and Appellant,**

v.

**Susan R. MONTGOMERY, n/k/a Susan R. Dick, Defendant and Appellee.**

**No. 20030010.**

Supreme Court of North Dakota.

Aug. 20, 2003.

Maureen Holman, Serkland Law Firm, Fargo, for plaintiff and appellant.

Wayne T. Anderson, Fargo, for defendant and appellee.

MARING, Justice.

[¶ 1] Lynn Montgomery appealed from an amended divorce judgment requiring him to pay $1,699 monthly child support and refusing to hold Susan Montgomery in contempt for failing to comply with visitation provisions of the existing judgment. We affirm in part, reverse in part, and remand for entry of judgment in accordance with this opinion.

I

[¶ 2] Lynn and Susan Montgomery were divorced in 1991. Susan was granted custody of the parties' two minor daughters, and Lynn was ordered to pay $3,500 per month in child support. Lynn appealed, challenging the amount of child support, and this Court affirmed. *See Montgomery v. Montgomery*, 481 N.W.2d 234 (N.D.1992). In the intervening years, the judgment was amended twice to revise child support and visitation. Under the provisions of the third amended judgment, Lynn was to pay $3,000 per month in child support and was to have extensive summer visitation, alternating holidays, and weekly telephone contact with the children.

[¶ 3] In July 2002, Lynn moved to reduce the amount of child support he was paying and sought to have Susan held in contempt for failing to comply with the visitation provisions of the existing divorce judgment. Lynn argued he had recently lost his position as an obstetrician/gynecologist with a clinic in Missoula, Montana, where he had been earning in excess of $300,000 per year and had been forced to open his own practice. Lynn argued his income from his new practice would be approximately $60,000 per year. Lynn also sought a reduction in child support because the oldest daughter had turned 18 and graduated from high school and, by the terms of the prior decree, he no longer had a duty to support her after June 1, 2002.

[¶ 4] The matter was tried to a referee, who issued her findings of fact, conclusions of law, and order for judgment on October 15, 2002. The referee found that Lynn would have earnings in 2002 of approximately $172,028 or $14,335 per month. After subtracting tax obligations, the referee found that Lynn's monthly net income would be in excess of $10,000 per month, resulting in child support for one child of $1,699 under the child support guidelines. *See* N.D. Admin. Code § 75–02–04.1–10. The referee ordered Lynn to pay $1,699 per month beginning with the August 1, 2002, payment. The referee also found Lynn's claim that Susan had interfered with visitation was not supported by the evidence, that Susan had attempted to foster visitation, and that the difficulties with visitation were due to Lynn's failure to establish a relationship with the children. The referee accordingly denied Lynn's request that Susan be held in contempt.

[¶ 5] Lynn filed a request for review by the district court. The district court adopted the referee's findings of fact and conclusions of law, and a fourth amended judgment was entered on November 20, 2002.

## II

[¶ 6] Lynn challenges the referee's finding that he would have gross income of $14,335 per month in 2002.

[¶ 7] We recently summarized the applicable standards of review in *Flattum–Riemers v. Peters–Riemers*, 2001 ND 121, ¶ 10, 630 N.W.2d 71 (citations omitted):

When a trial court reviews a judicial referee's decision on the record, the court examines the referee's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). If the trial court confirms or accepts the referee's findings of fact, we likewise review the referee's findings under the clearly erroneous standard. Findings of fact are clearly erroneous if they are induced by an erroneous view of the law, there is no evidence supporting them, or, although there is some evidence supporting them, on the entire record we are left with a definite and firm conviction a mistake has been made. A referee's conclusions of law are fully reviewable.

[¶ 8] The record shows that Lynn had $405,000 in total income in 2001. For the first three months of 2002, he earned $127,000 while employed by the clinic. His position was terminated on March 30, 2002, and he opened his private practice in April.

[¶ 9] Lynn presented evidence showing gross patient billings of $105,675 for April and May, the first two months of his new practice. He claimed his overhead for those two months was $54,000. In an exhibit attached to a July 17, 2002, affidavit in support of his motion, Lynn summarized his collections on billings. This exhibit showed that Lynn had collected $37,000, or approximately 35 per cent of his gross billings, for those two months. Lynn thus

claimed he had actually lost money on his practice for those two months. Lynn testified that he hoped his practice would grow in the future and that eventually he would have income of $5,000 per month. Lynn apparently calculated this amount using patient billing figures from his practice at the clinic and assuming a collection rate of 35 per cent on his patient billings.

[¶ 10] The referee found that the 35 per cent collection rate shown in Lynn's exhibit for the first two months of his practice was artificially low, finding it "more reasonable to believe he will collect at least 50% of the $68,675 remaining owed to him." In determining Lynn's income for child support purposes, the referee calculated Lynn's projected 2002 income at $172,028. The referee reached this figure by projecting income of $5,000 per month for the last nine months of the year ($45,-000) and adding that amount to the $127,028 Lynn earned in the first three months of the year. The referee accordingly set Lynn's monthly income at $14,335.

[¶ 11] Lynn argues the referee was not free to disregard "undisputed evidence" that Lynn would earn only $5,000 monthly from his practice. However, the trier of fact is entitled to weigh and evaluate testimony and is not required to accept even undisputed testimony. *See Young v. Young,* 1998 ND 83, ¶ 6, 578 N.W.2d 111; *Dodds v. North Dakota State Highway Comm'r,* 354 N.W.2d 165, 169 (N.D.1984). The trier of fact can best evaluate testimony because it observes the demeanor and credibility of the witness, and we do not substitute our judgment for that of the trier of fact when reasonable evidence supports the findings. *Young,* at ¶ 6.

[¶ 12] The evidentiary basis for Lynn's testimony that he could expect to earn only $5,000 monthly from his practice was, at best, conclusory and incomplete. Al-

though the hearing on the motion was held in September 2002, Lynn provided financial data only for the months of April and May, the first two months of his practice. The exhibit showing collections on Lynn's April and May patient billings was filed in July and was not updated prior to the hearing. In his July 17, 2002, affidavit, Lynn stated:

> At this point, I have received very little income from my private practice. Insurance payments typically take at least three months to be processed, so I really do not expect any significant income for a number of months. Attached as *Exhibit B* is a spreadsheet which shows my billings for April and May 2002, as well as the payments I have received on those billings.

Since most of the billings on the exhibit would have presumably occurred less than three months before the July 17, 2002, affidavit, it appears that the exhibit did not include insurance payments on those billings which would have been received after the date of the affidavit. Thus, it was not erroneous for the referee to question Lynn's use of the 35 per cent collection figure from that exhibit when projecting future income from Lynn's practice.

[¶ 13] The referee was faced with a difficult task. Lynn had a demonstrated income history, earning more than $250,000 annually since the divorce while employed as a physician in three separate positions in three separate states. He had total income of more than $405,000 in 2001. He earned $127,000 in the first three months of 2002, which would project to $508,000 annually. Yet Lynn claimed he could earn only $60,000 per year in his new practice. The referee found Lynn's projected income not credible, concluding that Lynn's reliance upon a 35 per cent collection rate was inappropriate and an addi-

tional 50 per cent would be a "reasonable" collection rate.

[¶ 14] In essence, the referee recognized that Lynn did not have the guaranteed income his position at the clinic had provided, but Lynn had failed to present credible, complete information from which his future income could be reliably projected. Faced with this dilemma, the referee based Lynn's child support on a projection of Lynn's income for 2002, using the $5,000 monthly income urged by Lynn for the last nine months of the year and Lynn's $127,000 actual income for January through March. Under the unusual circumstances presented in this case, we conclude the referee's findings of fact on Lynn's income fall within the range of the evidence and are not clearly erroneous.[1]

### III

[¶ 15] Lynn contends that, even if the finding of $14,335 monthly income is correct, the referee erred in determining his net income after taxes exceeded $10,000 and erred in ordering the amended support take effect with the August 1, 2002, payment.

[¶ 16] Susan concedes the referee's tax computations were incorrect and Lynn's net monthly income under the guidelines should have been $9,837. Using that figure, Lynn's support obligation for one child would be $1,667. *See* N.D. Admin. Code § 75–02–04.1–10. Susan also concedes that the modification of child support should have been effective with the June 2002 payment. Accordingly, we direct the district court on remand to enter an amended judgment ordering Lynn to pay child support of $1,667 per month commencing with the June 1, 2002, payment.

### IV

[¶ 17] Lynn argues the referee erred in failing to hold Susan in contempt of court for failing to fully comply with the visitation provisions of the divorce judgment.

[¶ 18] Our review of a trial court's determination on contempt is extremely limited. The trial court exercises broad discretion in determining whether to hold an individual in contempt. *Mid–Dakota Clinic, P.C. v. Kolsrud,* 1999 ND 244, ¶ 21, 603 N.W.2d 475; *Endersbe v. Endersbe,* 555 N.W.2d 580, 581 (N.D.1996). We have outlined the standards for proving civil contempt and for appellate review of the lower court's decision:

> In a civil contempt proceeding, a complainant must clearly and satisfactorily show that the alleged contempt has been committed. Civil contempt requires a willful and inexcusable intent to violate a court order. When reviewing a contempt sentence, the ultimate determination of whether or not a contempt has been committed is within the trial court's sound discretion. A trial court's finding of contempt will not be overturned unless there is a clear abuse of discretion. An abuse of discretion occurs when the trial court acts in an arbitrary, unreasonable, or unconscionable manner or when it misinterprets or misapplies the law.

*BeauLac v. BeauLac,* 2002 ND 126, ¶ 10, 649 N.W.2d 210 (quoting *Flattum–Riemers v. Flattum–Riemers,* 1999 ND 146, ¶ 5, 598 N.W.2d 499).

[¶ 19] The referee made the following findings regarding Lynn's allegations that

---

1. If evidence from a more representative time frame shows Lynn is in fact earning less in his practice than the amount found by the refer- ee, Lynn is free to move for a modification of child support under N.D.C.C. § 14–09–08.4(4).

Susan was not complying with the visitation provisions of the judgment:

> [Lynn's] claims regarding [Susan's] interference with visitation are not supported by the affidavits of [the children]. It appears [Lynn] hasn't really allotted time for his children when they have visited and consequently they have not wanted to visit to the fullest extent. It further appears that [Lynn] has not called the children nor has he returned the many calls made by the children.
>
> Given the age (14) of [the younger child] and her current feelings of not being important to her father, it is clear [Lynn] will have to make time available to have meaningful visitation.
>
> [Susan] has done her best to foster contact between both children and their father, but [Lynn] simply hasn't taken the time to build a relationship in part due to his frequent relocations.

[¶ 20] The referee's findings are supported by evidence in the record. We conclude the referee did not abuse her discretion when she failed to hold Susan in contempt.

[¶ 21] We do, however, express our reservations about one aspect of the referee's ruling on visitation. In her findings on the visitation problems, the referee stated:

> The problem is now further complicated by the remaining child having reached an age where her separate activities and friends are more important to her [than] visitation with a father who isn't present. These matters are best left to [Lynn] and [the remaining minor child] to work out.

[¶ 22] Visitation between a child and the noncustodial parent is presumed to be in the best interest of the child. *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 7, 657 N.W.2d 255. The visitation statute is not intended to place into the hands of the child power over the occurrence, length, time, or place of visitation. *Sevland v. Sevland*, 2002 ND 110, ¶ 10, 646 N.W.2d 689. We agree that it would be preferable if all of the parties could agree to a mutually acceptable visitation schedule. We must also recognize, however, that there is an existing judgment setting out visitation between Lynn and the remaining minor child, and Susan and the minor child are bound to comply with the judgment. If Susan believes a different visitation schedule is warranted by the child's current circumstances, she may move to modify that part of the judgment. Until the judgment is modified, she has an obligation to fully comply with the visitation provisions of the judgment.

### V

[¶ 23] We have reviewed the remaining issues raised by the parties and find they are either unnecessary to our decision or are without merit. We reverse that part of the judgment ordering Lynn to pay $1,699 per month in child support commencing with the August 1, 2002, payment and remand for entry of judgment ordering Lynn to pay $1,667 per month in child support commencing with the June 1, 2002, payment. In all other respects the judgment is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.