2005 ND 41

**Marlin W. INGEBRETSON,
Plaintiff and Appellant,**

v.

**Marla K. INGEBRETSON, Defendant
and Appellee.**

No. 20040156.

Supreme Court of North Dakota.

Feb. 22, 2005.

Douglas A. Christensen, Pearson Christensen, Grand Forks, ND, for plaintiff and appellant.

Wayne T. Anderson, Fargo, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Marlin Ingebretson appeals from a divorce judgment awarding Marla Ingebretson permanent spousal support of $1,500 per month, arguing the award was improper in light of Marla Ingebretson's trial testimony. Because the district court did not adequately explain its decision in light of the testimony heard at trial, we reverse and remand for reconsideration or further explanation of the award.

I.

[¶ 2] Marlin and Marla Ingebretson were married in 1985. They have two minor children. Marlin Ingebretson was 41 years old at the time of trial and Marla Ingebretson was 40. Throughout the marriage, Marlin Ingebretson was the owner and operator of Ingebretson Air Spray, Inc., an aerial application business in Mayville. Marla Ingebretson earned a degree in elementary education at Mayville State University and held various jobs, including dental assistant, elementary teacher, Head Start coordinator, home daycare provider, and helping with Marlin Ingebretson's business during the summer months in the early years of the marriage. She stayed home for four years to raise their children and then returned to the workforce. At the time of trial, she was working as a kindergarten teacher with monthly income of $1,458. Marlin Ingebretson's average monthly income for the prior five years was $6,074.

[¶ 3] The parties enjoyed a comfortable standard of living during their marriage. They lived in the home Marlin Ingebretson was raised in, accumulated assets valued at nearly $600,000, and vacationed at destinations such as Walt Disney World, Hawaii, the Bahamas, South Dakota's Black Hills, and a resort in Minnesota.

[¶ 4] Marla Ingebretson's pretrial documents requested "a reasonable amount of spousal support" and her post-trial proposed findings of fact provided for an award of permanent support of $1,800 per month. She testified on direct and cross-examination that she thought she would need spousal support of $1,800 to $2,000 for ten years. Her only explanation for the request was that she "took some advice from [her] lawyer." Marla Ingebretson submitted and testified to monthly expenses of $5,911, but then testified on cross-examination to monthly expenses of approximately $3,000. The trial court found Marla Ingebretson's monthly expenses to be $4,851. The court further determined she was a disadvantaged spouse and ordered Marlin Ingebretson to pay permanent spousal support of $1,500 per month.

[¶ 5] Marlin Ingebretson filed a motion to amend the judgment. The district court entered an amended judgment following a hearing on the motion, but did not amend the spousal support obligation. Marlin In-

gebretson appealed to this Court, arguing the spousal support award was not based on the evidence and the doctrines of judicial estoppel and judicial admission apply to Marla Ingebretson's testimony about her support needs and prohibit an award of permanent support.

## II.

[¶ 6] A district court's decision on spousal support is a finding of fact that will be set aside only if it is clearly erroneous. *Staley v. Staley*, 2004 ND 195, ¶ 7, 688 N.W.2d 182 (citing *Sommer v. Sommer*, 2001 ND 191, ¶ 8, 636 N.W.2d 423). A finding is clearly erroneous when it is induced by an erroneous view of the law, there is no evidence to support it, or a review of the entire record convinces this Court a mistake has been made. *Id.*

[¶ 7] An award of spousal support should be based on consideration of the *Ruff–Fischer* guidelines. *Staley*, 2004 ND 195, ¶ 8, 688 N.W.2d 182; *see Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966). Factors to consider under the guidelines include:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Staley*, at ¶ 8 (quoting *Sommer*, 2001 ND 191, ¶ 9, 636 N.W.2d 423). The district court's decision should be rationally based, but it is not required to make specific findings on each factor. *Staley*, at ¶ 8.

[¶ 8] The district court found Marla Ingebretson's monthly living expenses to be $4,851 and Marlin Ingebretson's monthly expenses to be $3,266. The court acknowledged that teaching positions are difficult to obtain in the Mayville area and budget restraints make continued employment uncertain. The court further found:

Marla has been disadvantaged by this marriage. This is a long-term marriage and Marla contributed to the financial growth of the marital estate. Marla worked for Marlin prior to the marriage as well as during the early years of the marriage in various capacities in his business. Marla mixed chemicals; cleaned airplane windows; did the book work; set up the billing system and computer system; answered the telephone; took air-spray orders; ordered and picked up chemical; and helped rake the gravel runway before it was asphalted. Even though Marla is a teacher, her earnings will likely never come close to the earnings of Marlin.

Further, the parties enjoyed a significant standard of living during the marriage, which included extensive travel to Mexico several times; the Bahamas; Hawaii; Disney World; the Black Hills; Red Lodge; Montana skiing approximately seven (7) times; to a lake resort near Park Rapids many times; Texas; Oklahoma; and Colorado. Additionally, Marlin went hunting annually in South Dakota, traveled to Reno, Nevada several times, hunts pheasant on a game preserve in Bejeau, Minnesota annually, hunts dear [sic] annually and made several trips out of state to hunt elk.

The Court finds that Marla is in need of permanent spousal support and finds that Marlin has the ability to pay permanent spousal support in the amount of $1,500 per month.

## A.

[¶ 9] Section 14–05–24.1, N.D.C.C., provides, "[t]aking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time. The court may modify its spousal support orders." This Court has frequently stated a preference for rehabilitative support rather than permanent. *See, e.g., Sommers v. Sommers,* 2003 ND 77, ¶ 17, 660 N.W.2d 586; *Fox v. Fox,* 1999 ND 68, ¶ 21, 592 N.W.2d 541. However, we have acknowledged "when there is substantial disparity between the spouse's incomes that cannot be readily adjusted by property division or rehabilitative support, it may be appropriate for the court to award indefinite permanent support to maintain the disadvantaged spouse." *Sommers,* at ¶ 17. "Permanent support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage." *Staley,* 2004 ND 195, ¶ 16, 688 N.W.2d 182 (quoting *Riehl v. Riehl,* 1999 ND 107, ¶ 11, 595 N.W.2d 10). This Court has not endorsed income equalization as a measure of spousal support, but has recognized that a difference in earning power can be considered when determining spousal support. *Sommers,* at ¶ 17.

[¶ 10] The district court's findings, while detailed, do not provide an adequate explanation of the decision to award permanent support when Marla Ingebretson testified she only required support for ten years. While it was not erroneous for the district court to award permanent support, it was erroneous to do so without providing sufficient explanation for its decision in light of the testimony heard at trial. We reverse and remand to the district court for detailed findings justifying the award of permanent spousal support or an amended judgment changing the award to rehabilitative support. Because "[q]uestions of property division and spousal support cannot be considered separately or in a vacuum, but ordinarily must be examined and dealt with together," *Sommers,* 2003 ND 77, ¶ 15, 660 N.W.2d 586, and because the property division may have influenced the award and structure of spousal support, *Fox,* 1999 ND 68, ¶¶ 20–22, 592 N.W.2d 541, the district court may, if it amends spousal support, also reconsider the property distribution.

## B.

[¶ 11] Marlin Ingebretson argues the district court's finding on Marla Ingebretson's monthly expenses is clearly erroneous. A party's need is a factor the district court can consider under the *Ruff–Fischer* guidelines. *Staley,* 2004 ND 195, ¶ 8, 688 N.W.2d 182. Marla Ingebretson submitted monthly expenses of $5,911 at trial. She testified on direct examination that even if she delayed working towards her master's degree, her monthly expenses would still be about $4,900. Marla Ingebretson's testimony on cross-examination indicated her expenses were lower than those submitted. She listed $60 for counseling and therapy, then stated neither she nor the children were currently attending. She admitted she was not currently paying a monthly life insurance premium of $60. Marla Ingebretson further testified her listed expenses for credit card bills were short-term and the bills would be paid off within a year at the listed rate. She testified other expenses were speculative, or had been listed "just in case." When asked what her current actual expenses were, Marla Ingebretson stated, "around $3,000 . . . give or take."

[¶ 12] The district court found Marla Ingebretson's monthly expenses did not

include $1,000 for continuing education or $60 for homeowners insurance. By removing these expenses, the court concluded Marla Ingebretson's monthly expenses were $4,851.

[¶ 13] This Court gives deference to the district court's findings when the district court was presented with conflicting testimony. *Montgomery v. Montgomery*, 2003 ND 135, ¶ 11, 667 N.W.2d 611. "The trier of fact can best evaluate testimony because it observes the demeanor and credibility of the witness, and we do not substitute our judgment for that of the trier of fact when reasonable evidence supports the findings." *Id.* It was not clearly erroneous for the district court to place greater credibility on Marla Ingebretson's testimony indicating higher monthly expenses.

### C.

[¶ 14] "To be awarded spousal support, the district court must find the requesting spouse to be 'disadvantaged.' A 'disadvantaged spouse' is one who has 'foregone opportunities or lost advantages as a consequence of the marriage.' " *Weigel v. Weigel*, 2000 ND 16, ¶ 11, 604 N.W.2d 462 (internal citations omitted). Marlin Ingebretson argues Marla Ingebretson is not a disadvantaged spouse because she was employed in her chosen field throughout much of the marriage and continues to work in that field.

[¶ 15] Marla Ingebretson's employment in her chosen field does not mean she had not made sacrifices and foregone opportunities as a result of the marriage. The district court found Marla Ingebretson was a disadvantaged spouse because she contributed to Marlin Ingebretson's business prior to the marriage and during the early years of the marriage when she was not employed as an educator. Marla Ingebretson also left the workforce for four years to stay home with the parties' children, enabling Marlin Ingebretson to continue building his business. Based on the record, the district court's finding that Marla Ingebretson was a disadvantaged spouse is not clearly erroneous.

### III.

[¶ 16] Marlin Ingebretson argues the doctrine of judicial estoppel applies to Marla Ingebretson's testimony on her spousal support needs and prohibits an award of permanent spousal support. This Court has declined to decide whether judicial estoppel applies in North Dakota. *See generally Meide v. Stenehjem*, 2002 ND 128, ¶ 15, 649 N.W.2d 532; *BTA Oil Producers v. MDU Resources Group*, 2002 ND 55, ¶ 14, 642 N.W.2d 873.

[¶ 17] We have said the following about judicial estoppel:

Judicial estoppel prohibits a party from assuming inconsistent or contradictory positions during the course of litigation. *See State v. Profit*, 591 N.W.2d 451, 462 (Minn.1999); 28 Am.Jur.2d *Estoppel and Waiver* § 74 (2000); 31 C.J.S. *Estoppel and Waiver* § 139(a) (1996). The underlying rationale for the doctrine is summarized in 28 Am.Jur.2d *Estoppel and Waiver* § 74 (footnotes omitted):

The fundamental concept of judicial estoppel is that a party in a judicial proceeding is barred from denying or contradicting sworn statements made therein. Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding; it is designed to prevent litigants and their counsel from playing fast and loose with the courts, and

to protect the integrity of the judicial process. Judicial estoppel doctrine is equitable and is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeating litigant.

The doctrine applies only where a party's subsequent position is totally inconsistent with its original position, and does not apply where distinct or different issues or facts are involved. *Profit,* 591 N.W.2d at 462; 28 Am.Jur.2d *Estoppel and Waiver* § 74; 31 C.J.S. *Estoppel and Waiver* § 139(a).

*Meide,* 2002 ND 128, ¶ 15, 649 N.W.2d 532 (quoting *BTA Oil Producers,* 2002 ND 55, ¶ 14, 642 N.W.2d 873).

■■■ [¶ 18] Assuming, without deciding, the doctrine of judicial estoppel applies in this state, we conclude the doctrine would not bar the district court's award of permanent spousal support. Marla Ingebretson's position following trial, requesting permanent spousal support in her proposed findings, is not "totally inconsistent" with her trial testimony requesting support for ten years. Marla Ingebretson did not change her position on whether she needed spousal support, but simply requested a longer term. In addition, we have recognized the district court has broad discretion in making an equitable distribution of property and allocation of spousal support to address the individual needs of divorcing parties. *Glander v. Glander,* 1997 ND 192, ¶¶ 8, 12, 569 N.W.2d 262. The exercise of that judicial function is not limited by the specific requests of the parties so long as the basis for the decision can be discerned. We note, for example, that while Marla Ingebretson testified she needed support for 10 years, she requested support in a greater amount. Spousal support is based upon the parties' needs and ability to pay. *Sommer,* 2001 ND 191, ¶ 10, 636 N.W.2d 423. Balancing these factors, a trial court may adjust both the amount and duration. The need for spousal support and ability to pay such support may be dependent upon the amount and nature of property distributed to each former spouse, including whether such property is income-producing. *Id.* at ¶ 16. The doctrine of judicial estoppel would not prohibit the permanent award. But where a party appears to have requested support for a limited period, it is incumbent on the court to explain such award.

## IV.

■■■ [¶ 19] "[T]estimony unfavorable to one's own contention can be a 'judicial admission' if it is 'deliberate, clear and unequivocal.'" *Malarchick v. Pierce,* 264 N.W.2d 478, 480 (N.D.1978). The majority rule, adopted in North Dakota, states the trier of fact has the responsibility of deciding the issue based on all the evidence, even when a party gives testimony that conflicts with her position. *Id.* Marla Ingebretson's testimony is not a limitation on the court's authority to structure an award of spousal support under N.D.C.C. § 14–05–24.1, provided the court articulates a valid reason for exceeding the duration requested.

## V.

[¶ 20] Where the evidence in the record does not support an award of permanent spousal support because the recipient testified she needed support for ten years, and the court has not articulated a reason for exceeding the duration of her request, we conclude the award of permanent spousal support was clearly erroneous.

We reverse and remand for detailed findings or an amended award.

[¶ 21] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, J., and WILLIAM F. HODNY, S.J., concur.

[¶ 22] The Honorable WILLIAM F. HODNY, S.J., sitting in place of MARING, J., disqualified.

SANDSTROM, Justice, concurring and dissenting.

[¶ 23]   I agree with many things written by the majority, but I disagree with its analysis that permanent spousal support might be appropriate when only rehabilitative spousal support had been requested.

[¶ 24]   Spousal support is appropriate when a party has been disadvantaged as a result of the marriage. *Weigel v. Weigel,* 2000 ND 16, ¶¶ 11–14, 604 N.W.2d 462; *Brown v. Brown,* 1999 ND 199, ¶ 32, 600 N.W.2d 869 (quoting *Riehl v. Riehl,* 1999 ND 107, ¶ 9, 595 N.W.2d 10) ("A 'disadvantaged' spouse is one who has 'foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity.' ").

[¶ 25]   In the case of long-term marriages, permanent spousal support may be appropriate, but it should not be the norm when rehabilitative support can overcome the disadvantage resulting from the marriage.   In view of this Court's longstanding position that rehabilitative, not permanent, spousal support is preferred, *see, e.g., van Oosting v. van Oosting,* 521 N.W.2d 93, 100 (N.D.1994); *Welder v. Welder,* 520 N.W.2d 813, 818 (N.D.1994); *Wiege v. Wiege,* 518 N.W.2d 708, 711 (N.D.1994); *Roen v. Roen,* 438 N.W.2d 170, 172 (N.D. 1989), I would conclude that permanent spousal support is inappropriate when only rehabilitative spousal support has been requested.

[¶ 26]   DALE V. SANDSTROM