708 A.2d 1232

LORI ANN GIANGERUSO, PLAINTIFF, v. WILLIAM
GIANGERUSO, III, DEFENDANT.

Superior Court of New Jersey,
Chancery Division Family Part,
Sussex County.

Decided December 1, 1997.

*Suzanne E. Sherman* for plaintiff.

*Mark Gruber* for defendant (*Gruber & Colabella, P.A.*).

GRAVES, J.S.C.

This is a post-judgment application for relief. The issue is whether the following language in a Property Settlement Agreement signed by both parties is valid and enforceable:

F. The parties agree that the children shall not have any contact with any girlfriend/boyfriend or love interest of the other if the children express reluctance to do so.

For the reasons that follow, the court is satisfied that the language in question is contrary to the best interests of the children. Accordingly, paragraph F of the parties' Settlement Agreement (Agreement) violates public policy and it is invalid and unenforceable.

The parties were married in 1988 and they have two children. William was born on November 1, 1988 and is now nine years old. Raymond was born on April 24, 1991 and is now six years old. The Dual Judgment of Divorce entered on April 3, 1997 incorpo-

rates a Property Settlement Agreement signed by both parties on March 26, 1997. Mr. Giangeruso and his present girlfriend, Laura, live together with their child. Apparently, the defendant's girlfriend had been a neighbor prior to the divorce. In her post-judgment application, the plaintiff seeks to hold the defendant in willful violation of paragraph F of the parties' Agreement based upon her claim that the defendant has ignored the children's wishes with respect to visitation. In response, Mr. Giangeruso seeks an order invalidating paragraph F.

In most cases, settlement agreements benefit the parties by promoting stability and certainty. Therefore, the policy of the courts is to encourage settlements and enforce agreements whenever it is fair and equitable to do so. *Lepis v. Lepis* 83 *N.J.* 139, 148–149, 416 *A.*2d 45 (1980). The policy of encouraging and honoring voluntary agreements is especially important in Family Court matters. *Davidson v. Davidson,* 194 *N.J.Super.* 547, 477 *A.*2d 423 (N.J.Super.Ch.1984). Traditionally, agreements that are negotiated and signed by the parties are "more comprehensive and particularized than court Orders, and thus more carefully tailored to the peculiar circumstances of the parties' lives." *Lepis,* at 154, 416 *A.*2d 45. This notion that voluntary settlement agreements offer an advantage over judicial decrees has led the New Jersey Supreme Court to point out that "It would be shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves." *Petersen v. Petersen,* 85 *N.J.* 638, 645, 428 *A.*2d 1301 (1981). The courts recognize that two responsible parents are usually better equipped than a judge to decide what is best for their children. As noted in *Tahan v. Duquette,* 259 *N.J.Super.* 328, 336, 613 *A.*2d 486 (App.Div.1992), "No stranger in a judicial robe, however able and well-motivated he or she may be, is equipped to make a decision as valid as the parents working together might make."

Nevertheless, when a court is asked to enforce or review a visitation agreement, or other agreements pertaining to the wel-

fare of children, there are special considerations. In such cases "The question is always what is in the best interests of the children, no matter what the parties have agreed to." *Hallberg v. Hallberg,* 113 *N.J.Super.* 205, 209, 273 *A.*2d 389 (App.Div.1971). Regardless of "the legal rights and claims of either parent, the wishes and personal desires of said parent must yield, if opposed to what the court, in the discharge of its duty, regards the welfare of the child to be." *Fiore v. Fiore,* 49 *N.J.Super.* 219, 225, 139 *A.*2d 414 (App.Div.1958), *certif. den.* 28 *N.J.* 59, 145 *A.*2d 168 (1958).

In this case, both parties certify to post-judgment visitation disputes. Therefore, the court must exercise "supervisory jurisdiction as *parens patrie.*" *Sheehan v. Sheehan,* 38 *N.J.Super.* 120, 125, 118 *A.*2d 89 (App.Div.1955). In *Hoefers v. Jones,* 288 *N.J.Super.* 590, 607, 672 *A.*2d 1299 (Ch.Div.1994), affirmed 288 *N.J.Super.* 478, 672 *A.*2d 1177 (App.Div.1996) the court concluded that the *parens patrie* doctrine, as it relates specifically to children and children's issues, "is the philosophical source of state law, of public policy governing their general welfare, best interests, right of protection, right to be free from harm and abuse." In its role as *parens patrie,* the court must scrutinize paragraph F to determine if it is in conflict with the right of the children to be free from harm.

The parents in this case have agreed that their two young children should have the final say whenever either parent seeks to spend time with the children while in the presence of a significant other. Although paragraph F may have been intended to encourage the parents to be sensitive to their children's feelings and considerate of their wishes, it has actually placed a heavy burden on the shoulders of two young children. For example, plaintiff certifies to an unpleasant incident that took place on July 25, 1997. According to Ms. Giangeruso, Raymond did not want to visit with his father because his older brother, William, objected to the visitation taking place in the presence of the defendant's girlfriend, Laura. Thus, it is apparent that the children are influ-

enced by a variety of factors—including each other. With regard to the same incident, Mr. Giangeruso certifies that the children wanted to visit with him, but not his girlfriend, "because their mother hates my girlfriend." Both parties certify that the police were called to plaintiff's home on July 25, 1997 to resolve the visitation problem. Apparently, the police interviewed one or both of the children in an effort to determine their wishes pursuant to paragraph F of the Property Settlement Agreement.

Ms. Giangeruso argues that defendant consistently violates paragraph F by refusing to respect the children's wishes. However, according to Mr. Giangeruso, plaintiff manipulates the children into not wanting to spend time with his girlfriend because the plaintiff dislikes defendant's girlfriend. Defendant certifies that "My kids will tell her (plaintiff) what she wants to hear because she questions them constantly and they are afraid to say how they really feel. This is not fair to these children." The court has been presented with conflicting certifications regarding the actions of the parents as well as the wishes of the children. Nevertheless, regardless of who is right or wrong, it is clear that the present arrangement is not in the children's best interests. As things now stand, the children are too intimately involved in complex and personal adult matters.

Plaintiff argues that paragraph F of the Agreement should be enforced by the court. She certifies that "The children were so adamant about not wanting to be in Laura's presence that our Judgment of Divorce specifically states at paragraph 2.1F that they do not have to have any contact with her 'if the children express a reluctance to do so.' " In response, defendant argues that the ability of the children to express their "reluctance" as to where they want to spend their visitation negatively impacts on his ability to exercise meaningful visitation even when his girlfriend is not present. According to Mr. Giangeruso, "It has gotten to the point that if the children don't feel like going to my house for whatever reason, they know that all they have to say to their mother is that they don't want to be around my girlfriend

and she will do or say whatever it takes to keep the children from me." Thus, because defendant is residing with his girlfriend, the present arrangement allows the two young children to effectively control whether or not they visit with their father.

While a sincere and genuine preference by a child is certainly a valid consideration in any custody or visitation dispute, such preferences are frequently subject to change and should not be viewed as conclusive or determinative with respect to visitation issues. In *Wilke v. Culp,* 196 *N.J.Super.* 487, 498, 483 *A.*2d 420 (App.Div.1984), *certif. den.* 99 *N.J.* 243, 491 *A.*2d 728 (1985), the court noted that in visitation matters the preference of the child should be subject to closer scrutiny than in custody matters, "especially where immature emotions as well as influence by the custodial parent may warrant diminishing the weight to be accorded such preference." In *Callen v. Gill,* 7 *N.J.* 312, 320, 81 *A.*2d 495 (1951), the court held that "a 12–year–old child has not attained that ripened discretion which enables him to determine conclusively what his own welfare demands." Moreover, it is not uncommon for older children, including teenagers, to be uncertain as to their residential and custodial preferences. *Ohlhoff v. Ohlhoff,* 246 *N.J.Super.* 1, 7, 586 *A.*2d 839 (App.Div.1991).

The two children in this case are only six and nine years old and should not be expected to know what is in their best interests. By shifting the decision making burden to the children, paragraph F of the Agreement places the children in the midst of ongoing post-judgment visitation disputes. The children should not have the power to veto visitation any more than they should be allowed to exercise veto power over other important matters in their lives—such as attending school on a daily basis. Furthermore, it is unfair to require the children to be policing their parents' relationships and they should not be forced to pass judgment on any present or future love interest that either parent may have.

Ms. Giangeruso has certified that the children resent the girlfriend "as they feel that she is the cause of daddy leaving them and breaking up our marriage." Nevertheless, plaintiff has not

presented any evidence that the children are subjected to any risk of harm, physically, emotionally, or otherwise, when they visit with their father in the presence of his girlfriend. Therefore, there is no factual basis or reason to deny Mr. Giangeruso visitation when he is in the presence of his girlfriend. See *Kelly v. Kelly,* 217 *N.J.Super.* 147, 524 *A.*2d 1330 (Ch.Div.1986). The children need to spend time with their father and they should be free to do so without being afraid that they might disappoint their mother or hurt her feelings if their father's girlfriend is present.

Plaintiff and the children have been participating in outpatient counseling at Northwest Covenant Medical Center since May 30, 1996. In a letter dated September 15, 1997, the treating clinician indicates that "the children have been seriously affected by the marital separation and subsequent divorce. They have had negative and angry feelings toward their father. He openly had an affair with a female neighbor known to the children when Mr. and Ms. Giangeruso were together. This caused pain and embarrassment in their lives as it was the subject of gossip among the neighbors and their playmates. The children have been the focus of many arguments in this volatile relationship and it apparently has not improved since their divorce on March 26, 1997." Thus, the staff clinician has recommended that the court mandate family counseling.

Ms. Giangeruso is to be commended for initiating individual psychotherapy and family sessions and Mr. Giangeruso will be required to fully participate and cooperate with family counseling. If visitation problems persist after family counseling is initiated, the parties are to access mediation pursuant to Rule 1:40–5 in an effort to resolve their disagreements. If family counseling and mediation are not successful, then either party may request a plenary hearing so that the court may resolve outstanding visitation issues consistent with the best interests of the children.

■ Courts are only required to enforce agreements to the extent that they are fair, equitable and just. *Petersen,* at 644, 428 *A.*2d 1301. Agreements pertaining to children are only enforce-

able to the extent that they promote the welfare and best interests of the children. *Hallberg,* at 209, 273 *A.*2d 389. Paragraph F of the Property Settlement Agreement is invalid and unenforceable because it is contrary to the best interests of the children.