2002 ND 110

**Diane L. SEVLAND n/k/a Diane L. Voight, Plaintiff and Appellant,**

v.

**Willy SEVLAND, Defendant and Appellee.**

**No. 20010231.**

Supreme Court of North Dakota.

July 11, 2002.

Donald L. Peterson, Kenner Sturdevant Peterson & Cresap, PC, Minot, for plaintiff and appellant.

Paul M. Probst, Probst Law Firm, Minot, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Diane Sevland appeals from the trial court's order of unsupervised visitation between Willy Sevland and their two children. Finding the order of unsupervised visitation was not clearly erroneous, we affirm.

I

[¶ 2] Diane and Willy Sevland were married in 1990 and divorced in 1999. They have two minor children, a boy and a girl, ages eight and six at the time of the divorce. Diane petitioned for a divorce following an incident of domestic abuse. The trial court's divorce judgment, after finding "credible evidence of domestic violence," awarded custody of the children to Diane. Willy was allowed unsupervised visits with the children. However, because of the domestic abuse incident, the trial court determined "it is necessary for the children's protection to limit [Willy's] visitation." The trial court ordered:

Visitation of the children shall occur only in Minot, North Dakota, for three hours on every other Sunday afternoon. After three months, if the minor children are willing, visitation may be increased by an additional hour. After an additional three months, if the minor children are willing, visitation may be increased by an additional one hour. After an additional three months, if the children are willing, visitation may be increased by an additional one hour. The children will be dropped off and picked up for visitation purposes in the central area of Dakota Square Mall. In

addition, Defendant shall have visitation for the same hours as Sunday visitation on Defendant's birthday, Father's Day and the children's birthdays. Defendant shall also have visitation under similar hours at Thanksgiving and two times near the Christmas holiday, one time at Easter and July 4th.

At the end of one year from entry of decree of divorce, the children or a party in interest may petition to have the visitation schedule reviewed.

Diane did not appeal the unsupervised visitation portion of the judgment, but instead refused to bring the children to the exchange point for visitation.

[¶ 3] As allowed by the divorce judgment, after one year Willy filed a motion to review the visitation schedule. The trial court amended the visitation schedule to provide for supervised visitation between Willy and the children. Six supervised visits occurred.

[¶ 4] After more than a year had passed since his last supervised visit with the children, Willy made a second motion to review the visitation schedule. Following a hearing, the trial court ordered unsupervised visitation between Willy and the two children, reasoning the children were uncooperative and subversive in the supervised setting. Diane appeals the unsupervised visitation order, arguing the trial court failed to consider the possibility of endangerment to the children's physical and emotional well-being. Willy argues supervised visitation was never required, and was used by the trial court only as a means of encouraging and insuring his visitation with the children. Willy contends because the one incident of domestic abuse did not result in serious bodily injury, involve either a weapon or the children, and was not part of a pattern of domestic violence, the visitation did not have to be supervised.

II

[¶ 5] "The trial court's decision on visitation is a finding of fact that will not be reversed on appeal unless it is clearly erroneous." *Kluck v. Kluck*, 1997 ND 41, ¶ 24, 561 N.W.2d 263. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although some evidence supports it, on the entire evidence this Court is left with a definite and firm conviction a mistake has been made. *Peterson v. Peterson*, 1999 ND 191, ¶ 6, 600 N.W.2d 851.

[¶ 6] In its original order, the trial court found "credible evidence of domestic violence by [Willy] upon [Diane] which the Court finds has not been rebutted by [Willy]." The trial court further found "its custody and visitation arrangement protects the children ... and is necessary because of domestic violence."

> If the court finds that a parent has perpetrated domestic violence and that parent does not have custody, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, the court shall allow only supervised child visitation with that parent unless there is a showing by clear and convincing evidence that unsupervised visitation would not endanger the child's physical or emotional health.

N.D.C.C. § 14–05–22(3). While the trial court found domestic violence had occurred, it did not find a resulting serious injury, the use of a dangerous weapon, or a pattern of abuse. *See id.* Because the trial court did not find either a serious injury, use of a weapon, or pattern of abuse at the time of the original judgment,

supervised visitation was not required under the statute.

[¶ 7] In the period between the divorce judgment and the first amended visitation schedule, nothing occurred which required the trial court to order supervised visitation. The change from unsupervised to supervised visitation was not mandatory under the statutory scheme and was simply an attempt at a new course of action to facilitate visitation between Willy and the children. Until the trial court ordered supervised visitation, Diane neither brought the children to the exchange point for visitation nor encouraged visitation. Following a psychologist's suggestion, the trial court decided to try the supervised setting as a way of nurturing a deteriorating relationship between Willy and the children. After six visits it was clear to the trial court a supervised setting was not having the desired effect on their relationship.

[¶ 8] During visits the children were unresponsive to Willy and his attempts at conversation. The children stood with their backs to Willy, sat with their backs to Willy, or placed their hands over their eyes or face during various visits. In one visit, Willy's daughter covered herself with a blanket, while in another, Willy's son laid on the floor, closed his eyes, and fell sleep. During another visit, Willy walked across the room to offer the children some candy only to have the children avoid contact by walking in circles around him.

[¶ 9] Recognizing its prior efforts to facilitate visitation through a supervised setting had been unsuccessful, the trial court decided to use the unsupervised setting. The trial court ordered the unsupervised setting because it believed:

The supervised visitation which we used is really contemplated by our law when [there has] been some domestic violence and [it has] really been frustrated by the children and that was who it was really set up to protect. So [ ] they have been their own worst enemy with that supervised visitation and it was for their benefit. And without some parental encouragement, I don't think supervised visitation in the future is going to be of any use. It's costly and useless and it's in such a controlled setting that it's easy for the children to control that.

Diane repeatedly stated she would not force the children to visit their father if they did not want. She did not encourage the children to visit Willy. Instead, as the trial court correctly observed, Diane allowed the children to control visitation either through their actions during the supervised visits or in their refusal to even visit in an unsupervised setting.

[¶ 10] Diane's indifferent attitude toward Willy's ability to visit the children conflicts with the statutory mandate "the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child...." N.D.C.C. § 14–05–22(2). "Visitation between a child and the noncustodial parent is legally recognized to be in the best interest of the child." *Healy v. Healy*, 397 N.W.2d 71, 73 (N.D.1986). The visitation statute is not designed to place into the hands of children power over the occurrence, length, time, or place of the visits. *See Giangeruso v. Giangeruso*, 310 N.J.Super. 476, 708 A.2d 1232, 1234 (1997) ("The children should not have the power to veto visitation any more than they should be allowed to exercise veto power over other important matters in their lives—such as attending school on a daily basis."). Diane has not presented any evidence the children are subjected to any risk of harm, either physical or emotional, by visitation with their father. The

change back to unsupervised visitation is an attempt by the trial court to promote visitation the best way it believes possible. We have recognized the need for trial court flexibility in visitation arrangements to foster the parent-child relationship when the custodial parent is frustrating visitation with the noncustodial parent. *See Hendrickson v. Hendrickson,* 1999 ND 37, ¶ 13, 590 N.W.2d 220 (holding although methods other than a change of custody should be utilized first, "a change in custody may be the only method to correct the damage of a particularly stubborn and defiant custodial parent"). We recognize a similar need when the children appear to be compliant in that frustration.

### III

[¶ 11]   We conclude the trial court's order of unsupervised visitation was not clearly erroneous and affirm.

[¶ 12] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.