**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2859-17T3

DANEEN A. KELLY,

     Plaintiff-Appellant,

v.

JOHN KELLY,

     Defendant-Respondent.

_____

Argued February 27, 2019 – Decided April 24, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0169-15.

Melissa M. Ruvolo argued the cause for appellant (Ruvolo Law Group, LLC, attorneys; Melissa M. Ruvolo, of counsel and on the briefs; Michelle A. Levin, on the briefs).

Bonnie C. Frost argued the cause for respondent (Einhorn, Harris, Ascher, Barbarito, & Frost, PC, attorneys; Ivette Ramos Alvarez, of counsel and on the brief; Bonnie C. Frost, on the brief).

PER CURIAM

In this matrimonial matter, plaintiff Daneen Kelly appeals from two orders, contending the Family Part judge erred in denying her request for a plenary hearing to determine custody issues, and in assessing counsel fees against her. After a review of the record and applicable principles of law, we affirm.

Plaintiff and defendant John Kelly were married in 1994, and have three children. This litigation centers on the youngest child, J.K. (Jack),[1] now eleven-years-old.

Plaintiff has mental health issues and has been treated for her panic attacks, anxiety, and depression since 2006. She alleged her relationship with defendant worsened her mental health condition. Defendant, in turn, described plaintiff's relationship with the children as "violent," "mentally abusive," "manipulative," and "condescending." As a result, the younger children are "afraid of [plaintiff] and are extremely upset because she frequently curses at them and ridicules them."

---

[1] We use a pseudonym to protect the child's privacy.

A-2859-17T3

In 2014, plaintiff filed for divorce. Plaintiff contends that after the matrimonial litigation began, Jack's ADHD worsened, he began to have "outbursts," and "refuse[d] to listen" to her. Both parties sought physical custody of the children and each retained experts to conduct a best interest evaluation.

Defendant's expert, a psychologist, issued a comprehensive report after interviewing plaintiff, defendant, their three children, the maternal and paternal grandparents, plaintiff's psychiatrist, and the parties' marriage counselor. He opined that the information provided by the family members "appear[ed] to be generally consistent" that defendant was a "caring father who has always been there for the children." He observed that plaintiff had done "immeasurable harm" to her immediate family, whereas, with defendant, "they fe[lt] safe, supported, and loved" and "ha[d] no problem in his presence when [plaintiff] [wa]s not around." The expert concluded "it would be in the best interest of [the children] to be in the primary custody of [defendant]."

Defendant's expert proposed a parenting plan for plaintiff and Jack that did not include overnights because Jack had "expressed a fear that [plaintiff] might harm him." The expert explained that, although Jack's fear might be "irrational," it was a "real fear for him and in view of everything else he has

 A-2859-17T3

been through recently, it would be against his best interest to force him into a situation that increases his fear and anxiety." He also cautioned that the family history indicated plaintiff had "an abusive relationship with the children," and a parenting plan "should be done with caution and in consideration of this fact." He suggested a "stepped up parenting plan," based on plaintiff's "progress in therapy and her demonstrated ability to gain insight and control of her emotions." He explained:

> This determination should be based upon her interactions and behavior in the presence of her son and also the recommendations of her individual therapist. It is hoped that she will take these recommendations seriously, engage in therapy, and begin to establish a positive, loving relationship with her children. . . . At that point in time in which she is successful in her therapeutic endeavors, parenting time should be increased. . . .

Because plaintiff's expert agreed with and adopted the defense expert's recommendations, plaintiff did not produce a competing best interest evaluation. In response to the experts' opinions and recommendations, the parties hired Dr. Richard Federici, Ph.D. to be Jack's therapist. In April 2015, Dr. Federici diagnosed Jack as suffering from post-traumatic stress disorder.

In citing the experts' findings and opinions, and in concern for the well-being of the children, Dr. Federici recommended "it would be in the best interest

4

of the children" for plaintiff to immediately leave the family home as she was "causing too much emotional turmoil." He also recommended plaintiff have limited supervised visitation with Jack. He explained these measures were intended to protect Jack from plaintiff, which could be "slowly . . . adjusted any time the circumstances change." Plaintiff voluntarily left the home shortly thereafter, leaving the children in defendant's custody.

In September 2015, Dr. Federici determined plaintiff and Jack should have therapeutic sessions with him once a week at his office. Plaintiff was to have "no other contact" with Jack, except for "Facetime" calls. Plaintiff complied with this recommendation. Jack continued to also have weekly sessions on his own with the psychologist.

The parties, represented by counsel, executed a marital settlement agreement (MSA) in March 2016, to be incorporated into their final judgment of divorce. The parties agreed to share joint legal custody of the children with defendant having primary physical custody. The MSA stated:

> [The younger daughter and Jack] do not wish, at this time, to have contact with [plaintiff]. As for [Jack], except as otherwise herein provided, no contact shall be required or permitted until such time as [Jack's] therapist, Dr. Richard Federici, and [Jack's] Guardian ad Litem (GAL), Terry Ann Bradley, Esq., recommend that reunification therapy with Dr. Mark Singer begins.

A-2859-17T3

The MSA accorded plaintiff the following parenting time with Jack:

> a. [T]elephone or Face Time/Skype contact on Monday, Wednesday and Friday between 7:30 and 8:00 p.m.;
>
> b. [A] weekly supervised one hour therapeutic parenting time session in Dr. Federici's office. The session shall proceed as directed by Dr. Federici; and
>
> c. [T]he GAL and Dr. Federici will determine when someone other than Dr. Federici can supervise therapeutic parenting time between [Jack] and [plaintiff].

Plaintiff agreed she would not attend Jack's school conferences or events, his extracurricular activities, or religious instruction until the reunification therapist recommended it. Plaintiff could attend special events for the children, such as Jack's communion, but she agreed to "have no contact . . . unless the contact [was] initiated" by the younger daughter or Jack.

Since the entry of divorce, Dr. Federici has treated Jack individually, and supervised the therapeutic sessions between plaintiff and Jack. In June 2017, Dr. Federici permitted plaintiff to have unsupervised parenting time on Saturdays. This new parenting arrangement was short-lived. After two unsupervised visitations, Jack refused to visit with plaintiff without supervision, prompting Dr. Federici to re-implement supervised Saturday visitations.

A-2859-17T3

The following month Dr. Federici informed the GAL that plaintiff "ha[d] been making significant progress and he [was] hopeful to continue expanding [her] parenting time." The GAL advised counsel she was "not in a position to recommend that a new best interest evaluation be completed."

In November 2017, plaintiff moved to modify custody and parenting time. She sought primary physical custody or, alternatively, a best interest evaluation, a plenary hearing to determine custody and parenting time, and reunification therapy with Jack. Defendant's cross-motion and opposition requested an order compelling plaintiff to pay her outstanding bill to Dr. Federici, a recommendation from Dr. Federici for a parenting schedule in Jack's best interests, and counsel fees and costs.

The Family Part judge denied plaintiff's motion in a January 17, 2018 oral decision, finding plaintiff had not demonstrated a change in circumstances to warrant a change in custody or parenting time. The judge noted that the parties agreed in the MSA that plaintiff and Jack would cultivate their relationship in a therapeutic setting. Although progress in their relationship was taking longer than plaintiff wanted, the judge found plaintiff's relationship with Jack was "progressing the way the parties agreed."

A-2859-17T3

With regard to defendant's counsel fee request, in a thorough written decision issued February 6, 2018, the judge determined plaintiff acted in bad faith in seeking primary custody when she only had limited supervised parenting time. After analyzing the requirements of Rule 5:3-5(c), the judge ordered plaintiff to pay $6,287.50[2] to defendant for his counsel fee and costs.

On appeal, plaintiff argues: 1) the Family Part judge abused her discretion in finding plaintiff failed to make a prima facie showing of changed circumstances sufficient to require modification of custody; 2) a plenary hearing was required to determine parenting time; 3) the judge improperly granted Dr. Federici decision-making authority; 4) the judge abused her discretion in awarding defendant counsel fees; 5) the judge's factual findings were not based on substantial and credible evidence; and 6) the judge is biased against plaintiff and should be removed from the case on remand.

We are mindful that our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We review a judge's decision on a motion to change custody for an abuse of discretion, "with deference to the

---

[2] This figure was approximately half the fees defendant asserted he incurred in opposing plaintiff's application.

expertise of Family Part judges." Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

"[I]n reviewing the factual findings and conclusions of a trial judge, we are obliged to accord deference to the trial court's credibility determination[s] and the judge's 'feel of the case' based upon his or her opportunity to see and hear the witnesses." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006) (citing Cesare, 154 N.J. at 411-13). Such deference will be "disturbed only upon a showing that the findings are 'manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence' to ensure there is no denial of justice." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Platt v. Platt, 384 N.J. Super. 418, 425 (App. Div. 2006)).

However, the interpretation and construction of a contract, such as a MSA, is a question of law for the trial court that is subject to de novo review on appeal. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo).

Given the deference afforded to the Family Part, we cannot discern an abuse of discretion in the judge's determination that plaintiff did not demonstrate

a change of circumstances sufficient to warrant a hearing to address custody and parenting time issues.

We give considerable weight to a parties' settlement agreement. Petersen v. Petersen, 85 N.J. 638, 642 (1981). "[F]air and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)). Before a court may consider a modification to a consensual agreement on custody, the moving party must show a substantial change in circumstances. R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014); Innes v. Carrascosa, 391 N.J. Super. 453, 500 (App. Div. 2007). If the party makes this initial showing, she is "entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order." Costa, 440 N.J. Super. at 4 (quoting R.K., 437 N.J. Super. at 62-63).

In evaluating whether the requisite changed circumstances exist, the court must consider the circumstances that existed at the time the current custody order was entered. Sheehan v. Sheehan, 51 N.J. Super. 276, 287-88 (App. Div. 1958). The court can then "ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288. The

court must also analyze the child's best interests, which are controlling "no matter what the parties have agreed to." P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) (quoting Giangeruso v. Giangeruso, 310 N.J. Super. 476, 479 (Ch. Div. 1997)).

Here, plaintiff moved to modify the parties' custody agreement nineteen months after executing the MSA. During that time, plaintiff's limited parented time had not changed; she graduated to unsupervised visitation only to regress back to supervised visitation. She neither alleged any facts unknown to the parties when the MSA was executed, nor did she include recommendations from Dr. Federici or the GAL, as required under the MSA, before reunification therapy could begin.

It was plaintiff's burden to show a change in circumstances and she failed to provide sufficient evidence supporting her request. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2005). Therefore, plaintiff was not entitled to a plenary hearing.

We briefly address plaintiff's contention that the Family Part judge abdicated her decision-making responsibility to Dr. Federici. With the representation of counsel, the parties executed a MSA that included custody and parenting time provisions. Prior to the entry of the MSA, the parties had chosen

Dr. Federici as Jack's therapist and plaintiff agreed to the doctor supervising her parenting time. In the MSA, plaintiff further agreed to Dr. Federici and the GAL determining when reunification therapy would begin.

Despite this, plaintiff claims the MSA violates the law because it gave Dr. Federici the power to determine Jack's best interests. As a general point, "[i]n implementing the 'best-interest-of-the-child' standard, courts rely heavily on the expertise of psychologists and other mental health professionals." Kinsella v. Kinsella, 150 N.J. 276, 318 (1997). However, "[a] court must not abdicate its decision-making role to an expert." P.T., 325 N.J. Super. at 216.

In P.T., we found the trial court abdicated its decision-making authority because the therapist was given "sole authority" and "sole control" over the process, had the "complete discretion" to determine when to begin reunification sessions, and the agreement barred the court from reviewing the therapist's determinations or cross-examining the therapist. Id. at 204-05, 214, 216.

Unlike P.T., here, the MSA did not grant Dr. Federici "sole authority" and "sole control" over the process. More importantly, the MSA did not bar the court from reviewing Dr. Federici's recommendations. But plaintiff's application did not provide any recommendations to the trial court for its consideration. In reviewing plaintiff's motion, the Family Part judge properly

considered the parties' MSA and noted plaintiff's lack of proofs of changed circumstances in rendering her decision.

Moving forward, however, we recognize the problematic issue of obtaining information and updates from Dr. Federici as his sessions and treatment with Jack are privileged. See N.J.S.A. 45:14B-28; see also N.J.R.E. 505. Both parties are anxious to be apprised of Jack's progress in therapy as they only receive limited information as the doctor chooses. The parties might consider retaining a joint neutral best interests evaluator to assess custody and parenting issues or request the appointment of an evaluator in a future court application.[3] A neutral evaluator might also assist the court in assessing any modification in custody or parenting time.

In addressing the counsel fee award, we will "disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

---

[3] Upon a showing of good cause, a judge has discretion to appoint an independent expert to conduct a best interest evaluation. R. 5:3-3(a) (providing that appointment of experts by the court is within its discretion to assist in disposition of an issue); see also R. 5:3-3(h) (explaining the parties may retain their own experts).

A-2859-17T3

We are satisfied the trial judge did not abuse her discretion in granting a limited counsel fee to defendant for his opposition to plaintiff's application.

When reviewing an application for counsel fees, a court is guided by "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A. 2A:34-23. The judge properly considered the factors under Rule 5:3-5(c), and found plaintiff acted in bad faith in presenting her motion to modify the agreed-upon custody arrangement.

"[W]here a party acts in bad faith the purpose of a counsel fee award is to protect the innocent party from unnecessary costs and to punish the guilty party." Welch v. Welch, 401 N.J. Super. 438, 448 (Ch. Div. 2008) (citing Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000)).

Bad faith in the context of a fee application relates to the party's conduct during the litigation. Mani v. Mani, 183 N.J. 70, 95 (2005). Bad faith requires an "improper motive," such as seeking relief "which one knows or should know that no reasonable argument could be advanced in fact or law in support thereof." Kelly v. Kelly, 262 N.J. Super. 303, 308 (Ch. Div. 1992); Borzillo v. Borzillo, 259 N.J. Super. 286, 293 (Ch. Div. 1992).

Here, the judge found plaintiff acted in bad faith because she filed her motion "despite only having supervised visitation" with Jack at the time and insufficient evidence to show a change in circumstances. We see no reason to disturb the counsel fee award.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2859-17T3