**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1407-18T1

JON LOWE,

     Plaintiff-Appellant,

v.

BRYANNA GRANT,

     Defendant-Respondent.

_____

          Submitted September 16, 2019 – Decided October 11, 2019

          Before Judges Rothstadt and Moynihan.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-1961-15.

          Jon Lowe, appellant pro se.

          Bryanna Grant, respondent pro se.

PER CURIAM

In this child custody dispute on remand from the Supreme Court,[1] we granted plaintiff Jon Lowe leave to appeal from the Family Part's October 31, 2018 order transferring residential custody of his six-year-old child to defendant Bryanna Grant, the child's mother. Previously, the parties agreed to joint legal custody and that plaintiff would maintain residential custody of their son until defendant was able to have the child live with her again. After a dispute arose about whether defendant should resume residential custody, the parties filed cross-motions, with plaintiff asking for sole custody and child support, and defendant seeking to maintain joint legal custody but have residential custody restored to her. After applying the statutory factors under N.J.S.A. 9:2-4, the motion judge denied plaintiff's motion, granted defendant's application, and established a parenting schedule for plaintiff. We affirm substantially for the reasons expressed by the motion judge.

At the outset, we observe that our review of this matter has been hampered by the parties' failure to comply with our rules and provide us with a

---

[1] The Court reversed our denial of permission to file an emergent application and directed that plaintiff be permitted to file a motion for leave to appeal and for a stay. See Lowe v. Grant, S-32-18 (082033) (Nov. 15, 2018).

complete record.[2]   We have cobbled together, from the limited record we obtained, what we understand to be the facts.

The parties, who have never been married, have one child, a six-year-old boy.  After the child's birth, the parties lived together at various times, but at some point, they separated with plaintiff eventually leaving New Jersey in 2016 to live in Pennsylvania.

After the parties separated, prior to any custody order being entered, they shared residential custody of their son[3] until plaintiff moved and settled into Pennsylvania.  At that time, the parties agreed they would have joint legal custody, with plaintiff having residential custody until defendant "got herself together."  Evidently, their agreement was incorporated into an August 6, 2016

---

[2]  See R. 2:5-3; R. 2:6-1; R. 2:6-2; R. 2:6-4; and R. 2:6-8.  We have gleaned much of the historical information from the court's recording of a May 30, 2018 hearing and from the motion judge's October 31, 2018 comments made on the record about the earlier hearing.  We were not provided with a copy of the transcript from the earlier hearing, even though the motion judge referred to that hearing in his October 31, 2018 oral decision.  Significantly, we have not been provided with an August 6, 2016 custody order, the home inspection or "best interest" reports ordered by the judge in advance of the October 31, 2018 hearing, or any certifications filed by the parties or anyone else in support of or in opposition to the parties' motions.

[3]  Defendant made this undisputed statement under oath on May 30, 2018.

order. It was undisputed that the parties agreed, once defendant "got herself together," that residential custody of the child would be restored to her.

During 2016 until 2018, the parties abided by the arrangement with plaintiff living with his son in a house in Pennsylvania, where plaintiff's wife and two other children also live. Evidently, plaintiff has a fourth child who does not reside with him. Plaintiff's eldest daughter has health issues. Additionally, plaintiff assists in caring for his mother and is himself on disability leave from his job.

After plaintiff left New Jersey in 2016, defendant lived in Newark with her mother, three sisters, and her sister's child. By October 31, 2018, defendant was in a relationship with a man, who plaintiff did not want involved in carrying out the parties' parenting schedule. Defendant also was working at a retail store.

Beginning in early 2018, the parties experienced problems keeping to their parenting time schedules. For instance, since plaintiff did not appreciate defendant's boyfriend getting involved in the exchange of their child on weekends, plaintiff required the custody exchange to occur in front of a police officer.

Plaintiff filed his motion on April 20, 2018, for "Modification of Court Order," in which we assume he requested that the August 6, 2016 order be modified to grant him "full custody" and child support. Defendant filed her cross-motion on May 22, 2018, seeking "sole physical custody, to relocate the child back to New Jersey, and to enroll him in school."

While the motions were pending, plaintiff obtained an order to show cause to enforce litigant's rights when defendant refused to return the child to plaintiff because she had no car and plaintiff refused to accommodate her.[4] A Family Part judge "ordered that . . . defendant return [the child] to . . . plaintiff," and set a May 30, 2018 return date.

On the return date, a different judge took testimony from the parties. Afterward, the judge "ordered that joint legal custody should continue as had previously been ordered," specifically "[t]hat [plaintiff] should continue to have . . . residential custody" and that the parties go to mediation.

Upon the child's return to plaintiff, plaintiff insisted he could no longer arrange for defendant's parenting time because he was assisting his mother

---

[4] Plaintiff and defendant testified to this statement under oath on May 30, 2018.

who had "major surgery." For that reason, defendant did not see her child from May 30, 2018 until July 15, 2018.

On July 12, 2018, the mediator abruptly terminated the proceeding based upon a misrepresentation made by plaintiff. When the mediation was terminated, the parties returned to the motion judge, who ordered "a best interest report and home inspection for both parties" to be conducted. The judge also ordered that the parenting time should continue as previously agreed to pending the matter's return and directed that each parties' "significant other . . . shall not be present when the exchange takes place."

The parties appeared before the motion judge again on October 31, 2018, for a hearing on their pending applications. Initially, the judge identified the statutory factors for a court to consider when deciding custody under N.J.S.A. 9:2-4 and then proceeded to make detailed findings based upon the parties' testimony from May 30, 2018, and the home inspection and "best interests" reports. He later made specific credibility determinations, finding that plaintiff was not credible and defendant was "truthful and not . . . self-serving."

In discussing the statutory factors, the judge found, among other things, the parties' lack of communication affected the ability of the parties to easily

6

carry out their earlier custody arrangement. He also found there were no safety concerns or issues with either party's willingness or ability to care for their son or with any of the individuals with whom they lived.

Addressing "the quality and continuity of the child's education," the judge found that both parties were able to provide their child with appropriate education to effectively deal with his attention deficit and any other conditions he may have. The judge acknowledged that while plaintiff had his son enrolled in a Pennsylvania school, in which the child was following an individualized education plan (IEP), he was satisfied that defendant could arrange for the child's needs because she "worked or volunteered at [the Newark] school, [so] she's aware that they do have the capacity at that school to provide . . . for [her son's] educational needs."

The judge also addressed each party's fitness to parent and found no issue with either of them. He also concluded that although defendant spent less time with the child, each party "spent a significant amount of time" with him.

The judge also addressed the parties' original custody arrangement and found it was undisputed the parties had agreed their son's residential custody was to be returned to defendant when she was able to care for the child. After

considering the parties' testimony from their May 30, 2018 appearance and the two reports he reviewed, the judge concluded that defendant "sorted her things out" and "that she is -- for lack of a better phrase -- together," as "she ha[d] a stable living situation" and "a stable work situation."  According to the judge, defendant had met her burden to establish that she could now care for her son as contemplated by the parties' agreement.

At the conclusion of the hearing, the motion judge entered an order that granted residential custody to defendant and denied plaintiff's motion for full custody and child support.  Plaintiff immediately filed an emergency petition with the court in Pennsylvania for modification of the motion judge's order. The Pennsylvania court acknowledged New Jersey's jurisdiction over the matter and dismissed the motion.  Thereafter, plaintiff attempted to seek an order to stop the transfer of residential custody from the motion judge in this case. However, the judge rejected the motion because he viewed the application as non-emergent and instead, treated plaintiff's motion as one for reconsideration that he planned to schedule at a later date.  The judge rejected plaintiff's request for a stay and, as already noted, we denied him permission to file an emergent application with our court, which the Supreme Court reversed

A-1407-18T1

and remanded. We granted plaintiff's leave to appeal the October 31, 2018 order on November 28, 2018, and stayed the order pending appeal.

On appeal, plaintiff raises concerns about his son's primary residence being changed to defendant's home in Newark. One of his concerns that related to the child's "educational and mental growth" was raised before the motion judge. According to defendant, the other concerns he now raises were not raised before the motion judge. Those concerns relate to his son's safety, the living conditions in Newark, the impact of his relocation on his relationship with his siblings, and the motion judge's failure to consider the progress the child made with his IEP in Pennsylvania.

When a party raises on appeal issues that were not raised before the trial judge, we generally will not consider them on appeal. See Correa v. Grossi, 458 N.J. Super. 571, 576 n.2 (App. Div. 2019); State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)) ("[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."). However, because we conclude that the child's best interests are of a paramount concern, we have

considered all of plaintiff's contentions and his proofs under our applicable standard of review.

Our scope of review of Family Part judges' "fact-finding is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). We review a judge's decision on a motion to change custody "for abuse of discretion, 'with deference to the expertise of Family Part judges.'" Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). "[I]n reviewing the factual findings and conclusions of a trial judge, we are obliged to accord deference to the [judge's] credibility determination[s] and the judge's 'feel of the case' based upon his or her opportunity to see and hear the witnesses." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006) (citing Cesare, 154 N.J. at 411-13). Such deference "will be disturbed only upon a showing that the findings are 'manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence' to ensure there is no denial of justice." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Platt v. Platt, 384 N.J. Super. 418, 425 (App. Div. 2006)).

Given the deference afforded to the Family Part, we cannot discern an abuse of discretion in the judge's determination that plaintiff failed to demonstrate a change of circumstances sufficient to warrant a deviation from

10

the parties' original custody and parenting time agreement. N.J.S.A. 9:2-4(d) requires a "court [to] order any custody arrangement which is agreed to by both parents unless it is contrary to the best interests of the child." We give considerable weight to parties' settlement agreements. See Petersen v. Petersen, 85 N.J. 638, 642 (1981). The Supreme Court has cautioned that in a court's consideration of agreements that address custody and parenting time, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999)).

Before a court may consider a modification to a consensual agreement on custody, the moving party must show "changed circumstances." R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014) (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)); Innes v. Carrascosa, 391 N.J. Super. 453, 500 (App. Div. 2007) (quoting Sheehan v. Sheehan, 51 N.J. Super. 276, 287 (App. Div. 1958)). "If the party makes [this initial] showing, that party is 'entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order.'" Costa, 440 N.J. Super. at 4 (quoting R.K., 437 N.J. Super. at 62-63).

In evaluating whether the requisite changed circumstances exist, the court must consider the circumstances that existed at the time the original custody order was entered. Sheehan, 51 N.J. Super. at 287-88. The court can then "ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288. The court must also analyze the child's best interests, which are controlling "no matter what the parties have agreed to." P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) (quoting Giangeruso v. Giangeruso, 310 N.J. Super. 476, 479 (Ch. Div. 1997)).

Applying these guiding principles here, we conclude that the motion judge correctly determined that the parties' original custody arrangement was not adverse to the child's best interest and that plaintiff failed to demonstrate a substantial change in circumstances that would warrant the abandonment of the original agreement. While we recognize that plaintiff proceeded without representation, once defendant established she was able to care for her son, plaintiff was obligated to come forward with evidence beyond his unsupported allegations that circumstances had changed to such a degree that the original arrangement was no longer viable. The motion judge concluded that plaintiff

12

failed to so, and we agree substantially for the reasons expressed by the judge in his oral decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION