**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4879-18T1

P.T.,

      Plaintiff-Respondent,

v.

J.M.,

      Defendant-Appellant.

_____

          Argued February 5, 2020 — Decided February 25, 2020

          Before Judges Koblitz, Gooden Brown, and Mawla.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0254-12.

          Jessica Ragno Sprauge argued the cause for appellant (Weinberger Divorce & Family Law Group, LLC, attorneys; Jessica Ragno Sprauge, on the brief).

          Marianne Zembryski argued the cause for respondent.

PER CURIAM

Defendant J.M.[1] appeals from a May 31, 2019 order modifying custody and parenting time provisions of the parties' marital settlement agreement (MSA).  We reverse and remand for further proceedings.

Defendant and plaintiff P.T. were married for approximately two-and-a-half years and divorced in November 2012.  One child, A.M., was born of the marriage, and was two years old at the time of the divorce.  In the MSA, the parties agreed to "share joint legal and physical custody of the parties' minor child," and neither was designated parent of primary residence.  Defendant's parenting time was as follows:

> (b) [D]efendant shall have parenting time with the minor child every Tuesday and Thursday from 6:00 p.m. until 8:00 p.m.  [Plaintiff] shall drop-off [A.M.] at 6:00 p.m. at [defendant']s residence and [defendant] shall return the child at 8:00 p.m. at [plaintiff]'s residence . . . .  [Defendant] shall have overnight parenting time on alternate weekends, from 6:00 p.m. Friday until 6:00 p.m. Sunday, which has already commenced as of January 13, 2012.  The [plaintiff] shall drop off [A.M.] at 6:00 p.m. at [defendant]'s residence on Friday, and [defendant] shall drop-off [A.M.] at 6:00 p.m. on Sunday at [plaintiff]'s residence . . . .  In addition, [defendant] shall have one overnight with [A.M.] alternating Thursdays.  For this particular Thursday parenting time, [defendant] shall pick up [A.M.] at [plaintiff's] residence at 6:00 p.m. and [plaintiff] shall pick-up Friday at [defendant]'s residence at 9:00 a.m.  It is the parties' intent that as the

---

[1]  We use initials to protect the child's privacy.

A-4879-18T1

child becomes older, [defendant]'s parenting time shall increase.

(c) Both parties will make best efforts to timely drop-off and/or pick up the child for parenting time, and absent an emergency, neither party shall be more than thirty minutes early or tardy.

The MSA included provisions for holidays and vacation time and stipulated the parties would attempt to resolve future disputes through discussion and mediation prior to filing a court application. Also relevant to this appeal was a provision of the MSA stating: "Neither party shall intentionally schedule any activities for the child on weekends that the other parent has the child with him or her, without the consent of the other party."

A parenting time dispute developed, which the parties unsuccessfully attempted to resolve through mediation. In 2019, plaintiff filed a notice of motion in aid of litigant's rights and sought, among other relief, a modification to the parenting time schedule because the MSA was negotiated when A.M. was less than two years old, and she was now nearly nine and in school. She also claimed parenting time should be modified because of "the inconsistency in the [d]efendant's exercise of his parenting time and the very abrasive manner in which [he] interact[ed] and communicate[d]" with her. Plaintiff sought to eliminate defendant's Tuesday/Thursday midweek dinners replacing them with

3

a Thursday overnight, and increase his weekend parenting time to commence from Thursday and continue through Sunday on alternating weeks.

Defendant opposed plaintiff's motion and filed a cross-motion to increase his parenting time to have an overnight every Thursday, alternating weekends from Friday to Sunday, and dinners Tuesday night. Defendant proposed an equal shared parenting schedule during the summer.

The motion judge heard oral argument and found a change in circumstances based on A.M.'s maturation. The judge directed the parties to mediation with family division staff before deciding the motions. Mediation was partially successful but did not resolve the issues raised on appeal.

Nearly three months later, the motion judge signed the May 31, 2019 order. In pertinent part, the order read as follows:

> 8. Defendant's parenting time with [A.M] is modified such that [d]efendant shall have alternate weekends beginning on Thursday pick-up from school until Sunday drop-off at 6:00 p.m. when school is in session on Monday, and 8:00 p.m. when school is not in session on Monday. (All pick-up and drop-offs not occurring at school shall occur at the curb outside [p]laintiff's home).
>
> 9. On those weeks that [d]efendant does not have alternate weekend parenting time with [A.M.], he shall have parenting time on Tuesdays from 6:00 p.m. to 8:00 p.m.

. . . .

12. During parenting time, both parents shall ensure that [A.M.] attend[s] and [is] transported to and from scheduled extracurricular activities and social events, regardless of which party may have parenting time on the day the activity or event falls. If an activity or event falls during [d]efendant's parenting time and [d]efendant is unwilling or unable to transport [A.M.] to same, [p]laintiff shall have the option of transporting [A.M.] to and from the activity or event. In the event that [p]laintiff transports [A.M.], and the activity or event ends more than one and one half (1.5) hours prior to the conclusion of [d]efendant's scheduled parenting time, [p]laintiff shall return [A.M.] to the [d]efendant at the conclusion of the activity or event.

13. The parties shall exchange [A.M.'s] sports and activity schedules immediately upon his or her receipt of same. In the event of changes to the schedule, the parent receiving same shall immediately notify the other of the changes. If either [p]laintiff or [d]efendant learns that he or she will be unable to transport [A.M.] to such events or activities, he or she shall notify the other five days prior to the event. Neither party may withhold information about any of [A.M.'s] activities from the other Parent.

14. [A.M.] shall also be permitted to attend special events, including, but not limited to, birthday parties for her family and friends, without consideration of which party is scheduled to have parenting time on the day the special event falls. Notice shall be given ten (10) days prior to the event in writing. The party enjoying parenting time shall ensure that [A.M.] is transported to and from the event, or if that party is unable or unwilling to do so, the party that wishes [A.M.] to attend the special event shall transport her to and from

same. If a party is unwilling or unable to transport [A.M.] to a special event, he or she shall notify the other five days prior to same.

. . . .

17. Defendant's requests to hold [p]laintiff in violation of [l]itigant's [r]ights for not making [A.M.] available for daily communication with [d]efendant while on vacation during August, 2018; enrolling [A.M.] in summer camp without [d]efendant's authorization and failing to notify [d]efendant of [A.M.'s] medical appointments are denied . . . .

The statement of reasons attached to the order stated: "This court set forth on the record its reasoning for the decisions included in the attached [o]rder pertaining to the parties' financial issues, including . . . the non-holiday parenting time schedule[,] [and] other issues arising from weekday and weekend parenting time . . . ." The only other reasoning in the statement of reasons pertained to the holiday parenting time schedule and the notice plaintiff should provide defendant regarding A.M.'s medical appointments.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by

6

or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (alterations in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Defendant argues the motion judge made no findings regarding the modification of parenting time. He asserts the judge departed from the MSA and rewrote the parenting time and activity provisions. He argues the judge should have held a plenary hearing to address the material dispute in facts.

Rule 1:7-4(a) requires the trial court to make findings of fact and provide conclusions of law. Fact-finding "is fundamental to the fairness of the proceeding and serves as a necessary predicate to meaningful review . . . ." R.M. v. Sup. Ct. of N.J., 190 N.J. 1, 12 (2007). "Naked conclusions do not satisfy the purpose of R[ule] 1:7-4. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980).

Here, both parties asked the judge to modify the parenting time schedule, and plaintiff sought a modification of the activity provisions of the MSA. The executory language of the judge's order readily demonstrates how he endeavored to practically accommodate each parties' arguments. However, the order lacks

the necessary findings explaining how the judge arrived at the conclusions set forth in it. The judge needed to articulate the reasons for the modifications to parenting time and the enforcement relief granted. Without the necessary reasoning, we are constrained to reverse and remand paragraphs eight, nine, twelve, thirteen, fourteen, and seventeen of the May 31, 2019 order for further findings.

We reject defendant's argument that the judge could not modify the custody and parenting time terms of the MSA. As the motion judge noted, a child's maturation, which occasions a change in the child's needs, constitutes a change in circumstances. Lepis v. Lepis, 83 N.J. 139, 151-52 (1980). The change in circumstances standard applies to custody and parenting time matters. See Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993) (holding "circumstances under which a prior judgment may be disturbed [are] when there are changed circumstances which would have an impact on the child's welfare.").

Moreover, a Family Part judge is expressly empowered to assure a child's best interests. Pursuant to N.J.S.A. 9:2-3 "the Superior Court, in an action brought by either parent, shall have the same power to make judgments or orders concerning care, custody, education and maintenance as concerning a minor

child." "The 'best-interest-of-the-child' standard is more than a statement of the primary criterion for decision or the factors to be considered; it is an expression of the court's special responsibility to safeguard the interests of the child at the center of a custody dispute because the child cannot be presumed to be protected by the adversarial process." Kinsella v. Kinsella, 150 N.J. 276, 317-18 (1997). "The court must focus on the 'safety, happiness, physical, mental and moral welfare' of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)); see also P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) (alterations in original) (internal quotations omitted) ("In issues of custody and visitation '[t]he question is always what is in the best interests of the children, no matter what the parties have agreed to.'" (quoting Giangeruso v. Giangeruso, 310 N.J. Super. 476, 479 (Ch. Div. 1997))).

Finally, the parties differ on whether a plenary hearing was necessary to resolve their dispute. Defendant believes a hearing was required to address "contradictions [in the parties' certifications] and make findings of credibility." Plaintiff asserts the modifications to the parenting time were "modest" and did not warrant a hearing. Regardless, she argues defendant never requested a plenary hearing and should be barred from seeking one on appeal.

9

When there is a change in circumstances,

> [a] plenary hearing is required when the submissions show there is a genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute. . . .
>
> In some cases, there is clearly a need for an evidentiary hearing to resolve custody or parenting time issues. See, e.g., P.T., 325 N.J. Super. at 215, 222 (evidentiary hearing required prior to entry of order of joint custody and unsupervised visitation with father who had been accused of sexually abusing the child); Mackowski v. Mackowski, 317 N.J. Super. 8 (App. Div. 1998) (holding that father's motion to transfer custody of sixteen-year-old daughter, who repeatedly expressed preference to live with father, should not have been decided without a plenary hearing); Fusco v. Fusco, 186 N.J. Super. 321 (App. Div. 1982) (holding that plenary hearing was necessary to determine nature and extent of visitation to be granted to father who was serving a thirty-two-year prison term for first-degree murder). See also Dorfman v. Dorfman, 315 N.J. Super. 511, 518 (App. Div. 1998) (noting that detailed and documented evidence demonstrating that "child was experiencing significant behavioral problems" warranted court intervention "to at least order an investigation of the problem"). In many cases, however, where the need for a plenary hearing is not so obvious, the threshold issue is whether the movant has made a prima facie showing that a plenary hearing is necessary.
>
> [Hand, 391 N.J. Super. at 105-06 (second alteration in original).]

We reject the argument defendant waived a plenary hearing. "'[A] plenary hearing must be required' if it would assist the court in making its determination." P.T., 325 N.J. Super. at 214-15 (quoting Fusco, 186 N.J. Super. at 327).

The motion judge recognized there was a change in circumstances warranting a modification of certain parenting time and activity provisions of the MSA. During oral argument of the motions, the judge stated, "[n]either of you is entirely wrong about what you're saying in the positions that you're taking, but neither of you is entirely right either[,]" indicating there was a potential material dispute affecting A.M.'s best interests. Because of the lack of findings, we are unable to discern the reasons for the judge's decision, including his decision to enter the order without a plenary hearing. For these reasons, we reverse and remand to the motion judge to determine whether to schedule a plenary hearing to decide the issues raised in the parties' motions and make the necessary findings in support of the resultant order.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4879-18T1