# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2026 ND 51

Sarah E. Bedgar,                                Plaintiff and Appellee

v.

Jeremy R. Wilson,                              Defendant and Appellant

and

State of North Dakota,                    Statutory Real Party in Interest

## No. 20250389

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Justice.

Micheal A. Mulloy, Bismarck, ND, for plaintiff and appellee.

Rodney E. Pagel, Bismarck, ND, for defendant and appellant.

**Jensen, Justice.**

[¶1]   Jeremy Wilson appeals from an order which found him in contempt of court for failing to pay shared expenses required by his divorce judgment and ordered him to pay remedial sanctions to Sarah Bedgar, including attorney's fees. Wilson challenges the contempt finding and sanctions. He also contends the district court should have found Bedgar's contempt motion frivolous and awarded him attorney's fees and remedial sanctions. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2]   In September 2021, the parties entered into a stipulation which was incorporated into a judgment of divorce and parenting plan. The judgment has specific provisions for payment of the extracurricular activities, school events, and medical expenses for the parties' three children.

[¶3]   For extracurricular activities and school events, the judgment listed six activities in which the children had traditionally participated (4-H, FFA, volleyball, basketball, band, and choir), indicated the children may continue to participate in those activities, and provided that the parties would split all expenses equally between them, but that 4-H/FFA "related" expenses would be addressed and agreed upon on an individual expense-by-expense basis. Stutsman and McLean County 4-H showings and FFA agricultural education were listed as traditional activities, distinguishing those from 4-H/FFA "related" expenses that required agreement on an expense-by-expense basis. For any activities not listed as "traditional," the judgment provided the parties would have a discussion through the Our Family Wizard application, and if consent was reached the parties would split the new expenses equally.

[¶4]   For medical expenses, the judgment delineated between emergency and non-emergency healthcare decisions, but provided the parents would share equally all out-of-pocket medical expenses and obligated the party paying the expense to submit the bill to the other party who was then obligated to pay their

1

portion within 30 days. No deadline was imposed for the submission of the medical expenses to the other party.

[¶5] The judgment also had a specific provision about communications between the parties on the Our Family Wizard application, and provided that "[i]n the event a question is posed, and no response is received within five (5) days, it shall be presumed that the parties are in agreement relating to the question being posed."

[¶6] Within four months of the judgment, Bedgar moved the district court to hold Wilson in contempt asserting Wilson was not paying his share of the expenses for the children. One of Wilson's arguments was that he was not obligated to pay expenses pursuant to the judgment's communication provision unless Bedgar's requests were submitted in the form of a question. The court rejected this argument, saying "I think it's understood, as a native English speaker, that when you submit a bill for someone, you're saying, 'Please pay this bill,' and that's the communication that was submitted by [Bedgar], and it was not responded to by [you]." The court further stated it was "plain in the Judgment that if you don't object to those questions posed within five days, there is agreement. So what we have is just simply non-payment, and for that reason, I find [you] in contempt[.]" After the hearing, the parties entered into a stipulation agreeing to the amount of unpaid medical expenses and attorney's fees that Wilson would pay. The court incorporated the parties' stipulation into a written order.

[¶7] Although the parties initially had joint-decision making authority, Bedgar later moved the district court to grant her primary decision-making responsibility asserting that Wilson was not participating in co-parenting, which included important decisions about their children's mental health. After an evidentiary hearing, the court entered an order granting temporary sole decision-making responsibility to Bedgar.

[¶8] In November 2024, Bedgar again moved to hold Wilson in contempt asserting he had not been paying shared expenses since the district court granted her temporary sole decision-making authority in April 2022. In the contempt

hearing that followed, Bedgar introduced a spreadsheet showing forty-five separate expenses she incurred between March 2022 and September 2024 totaling $17,092.30. Included in the list were three expenses totaling $4,808.80 that had not yet been submitted to Wilson but were alleged to be shared medical, educational, and approved activity expenses Wilson was required to pay pursuant to the judgment. Also included were four expenses for mileage totaling $4,050.15 that Bedgar had incurred for transporting her children to therapy appointments. Bedgar also introduced a number of exhibits showing her communications to Wilson through the Our Family Wizard application.

[¶9]   During the hearing, Wilson admitted he was required to pay the expenses required by the judgment (i.e., the extracurricular activities/school events and medical expenses outlined therein). He also admitted there were a few expenses that had been submitted to him which he had not paid. Wilson did not offer any evidence to show he did not have the ability to pay. He took issue with some extracurricular activity/school event expenses he was required to pay pursuant to the judgment on the grounds that—despite an activity being listed as a traditional activity—it was not a traditional activity for the particular child linked to the expense. He took issue with some of the out-of-pocket medical expenses—such as retainer insurance and Lego social skills group therapy sessions—on the grounds that those were not medical expenses he was required to pay pursuant to the judgment. He also took issue with some of the 4-H/FFA "related" expenses on the grounds that they required his consent. Finally, he submitted proof he had paid $439.53 of the expenses Bedgar had submitted to him.

[¶10] The district court held a second hearing on the contempt motion. During the hearing, the court found Bedgar "claimed reasonable expenses contemplated by the judgment and provided sufficient notice to [Wilson] to pay those expenses, and that they are not paid, and that [Bedgar] has met her burden of proof to establish that they were not paid and that sufficient notice was provided to [Wilson]." The court engaged in a line-by-line review of the forty-five items listed on Bedgar's spreadsheet, finding that some were not contemplated by the judgment or consented to by the parties and would not be awarded but that any not expressly denied would be granted.

[¶11] The district court specifically addressed both the retainer insurance and Lego social skills group therapy sessions and found they were out-of-pocket medical expenses Wilson was required to pay. The court denied eleven of the forty-five items from Bedgar's spreadsheet, as well as part of a twelfth item to the extent it involved a non-traditional activity expense (Taekwondo). A disallowed expense of $695.13 (for a child's visits to colleges) was one of the three expenses that had not yet been submitted to Wilson, meaning $4,113.67 in remedial sanctions were awarded for expenses that had not been submitted to Wilson but which the court found were required to be paid by the judgment. In addition, by not specifically denying them, the court permitted the expenses for mileage Bedgar had incurred for transporting the children to therapy appointments.

[¶12] The district court directed Bedgar's counsel to calculate the amount of expenses authorized, adjust the interest accordingly, and recalculate the total amount to be awarded. The court later entered a written order repeating its findings that Bedgar had satisfied her burden of proof, that Wilson was in contempt, and awarding $15,611.39 in remedial sanctions as well as $5,242.66 in attorney's fees and costs.

II

[¶13] Wilson challenges the district court's finding that he was in contempt. "The district court has broad discretion in making contempt decisions." *Rath v. Rath*, 2017 ND 128, ¶ 9, 895 N.W.2d 306. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner; its decision is not the product of a rational mental process leading to a reasoned determination; or it misinterprets or misapplies the law." *Id.* This Court's review of a contempt determination "is very limited." *Glasser v. Glasser*, 2006 ND 238, ¶ 12, 724 N.W.2d 144.

[¶14] Civil contempt requires the movant to clearly and satisfactorily show that the alleged contempt has been committed, and that there was a willful and inexcusable intent to violate a court order. *Montgomery v. Montgomery*, 2003 ND 135, ¶ 18, 667 N.W.2d 611. "If valid reasons for the district court's finding are

4

fairly discernable, either by deduction or inference, the finding will not be reversed." *Arnold v. Trident Res., LLC*, 2020 ND 104, ¶ 10, 942 N.W.2d 465.

[¶15] The record supports the district court's finding that Wilson was in contempt. Wilson admitted he failed to pay some of the expenses submitted to him. He also presented no evidence of an inability to pay. *See, e.g.*, *Thorlakson v. Wells*, 207 N.W.2d 326, 329 (N.D. 1973) (indicating where there is an admission of nonpayment, a contemnor "must show valid reasons to legally justify his contempt or that his acts were not contemptuous"). Bedgar submitted evidence of expenses she had incurred over a considerable period of time between March 2022 and November 2024. She also submitted proof she was following the procedure through the Our Family Wizard application for requesting reimbursement. Furthermore, even though Wilson admitted to owing some of the expenses that were submitted to him that he had not paid, he has never tendered payment of those undisputed amounts to Bedgar.

[¶16] Like the district court did in the first contempt hearing, we reject Wilson's claim that Bedgar's requests for expenses must be in the form of a question to be valid, both with respect to expenses the judgment requires Wilson to pay, as well as expenses to which Wilson consents if he fails to object within five days. We also reject Wilson's argument that the "traditional" extracurricular activities listed in the judgment are subject to a particular child analysis.

[¶17] The district court did not abuse its discretion in finding Wilson in contempt.

III

[¶18] Wilson challenges the amount of remedial sanctions the district court awarded, as well as the attorney's fees included as a remedial sanction.

[¶19] After a finding of contempt, a decision to award remedial sanctions "lies within the sound discretion of the trial court[.]" *Harger v. Harger*, 2002 ND 76, ¶ 14, 644 N.W.2d 182. Remedial sanctions include monetary payment for a loss or injury suffered as a result of the contempt, including an amount to reimburse the party for costs and expenses incurred as a result of the contempt. *See*

5

N.D.C.C. § 27-10-01.4(1)(a). The district court also has authority to issue a sanction other than those specified in section 27-10-01.4 "if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt." N.D.C.C. § 27-10-01.4(1)(e).

A

[¶20] With respect to the amount of expenses awarded as part of the remedial sanctions, the statutory provisions referenced above demonstrate remedial sanctions cannot be broader than necessary to address the specific contemptuous conduct, i.e., the sanctions must be compensation for actual losses *caused* by the contempt or have a nexus to compelling future compliance.

[¶21] Our review of the record shows the district court awarded remedial sanctions for the $439.53 Wilson presented proof that he had already paid. This was an error because Bedgar did not suffer a loss for those expenses, and Wilson was not in contempt for expenses he had already paid.

[¶22] During oral argument, Bedgar's counsel conceded that two items on her spreadsheet totaling $2,626.54 for home schooling and Advance Placement (AP) college courses were not expenses that Wilson was required to pay pursuant to the judgment. Based on this concession, the remedial sanctions should not include Wilson's half of those expenses ($1,313.27) because Wilson was not in contempt for expenses Bedgar concedes Wilson was not required to pay pursuant to the judgment.

[¶23] The district court awarded another $4,113.67 in remedial sanctions for expenses that had not yet been submitted to Wilson but which the court found were required to be paid by the judgment. Even though Wilson may be required to pay those expenses pursuant to the judgment, Wilson was not in contempt for expenses Bedgar had not previously submitted to him, and only submitted to him as part of the contempt motion itself. Because this amount was not *caused* by the contempt, awarding it as a remedial sanction would require express findings under N.D.C.C. § 27-10-01.4(1)(e) that the sanction is needed to compel future compliance. Those express findings are absent from this record.

6

[¶24] The district court awarded another $4,050.15 for mileage expenses Bedgar incurred in transporting their three children to therapy, an expense she alone bore after Wilson's time with the children was limited to supervised visits. Bedgar has not called to our attention any North Dakota case law or statute explicitly authorizing mileage reimbursement for transporting children to medical appointments as part of a medical expense obligation in a divorce decree or judgment. Although the judgment says medical expenses "include medical, dental, vision, orthodontia, prescription, counseling, and other related expenses," the reference to "other related expenses" is not sufficiently clear to find that Wilson was in contempt for failing to pay mileage expenses, or for the court to include mileage expenses as a remedial sanction. Although there may be other avenues that Bedgar can pursue to obtain payment for her mileage expenses after she alone bore this expense, the court abused its discretion in awarding the mileage expenses as a remedial sanction in a contempt proceeding.

[¶25] Finally, the record is unclear as to whether some of the 4-H and FFA expenses that were awarded were part of the "traditional" activities for which consent was not required (i.e., Stutsman and McLean County 4-H showings and FFA agricultural education), or were 4-H/FFA "related" expenses that required consent on an expense-by-expense basis.

[¶26] In light of the fact that some of the remedial sanctions were unwarranted, others were not supported by the express findings required by statute, and still others were awarded despite an unclear record, we reverse the district court's award of remedial sanctions and remand for further proceedings consistent with this opinion.

B

[¶27] Wilson also challenges the amount of attorney's fees awarded to Bedgar as part of the remedial sanctions, claiming the district court abused its discretion in awarding the full amount Bedgar requested because he alleges her motion was frivolous in part. Wilson further seeks his own award of attorney's fees and costs as a remedial sanction for having to respond to Bedgar's allegedly frivolous motion.

[¶28] Bedgar's motion has merit, even if she did not obtain complete success. Wilson's counsel admitted that Wilson had not paid some expenses he concedes he owes. Bedgar had to bring a motion to get paid for expenses the judgment required Wilson to pay. Her motion was therefore not frivolous. *See, e.g.*, *Dogbe v. Dogbe*, 2023 ND 133, ¶ 22, 993 N.W.2d 491 ("By definition, a meritorious motion is not frivolous."). Even when a contempt motion is only partially successful, a district court has discretion to award the attorney's fees it deems reasonable pursuant to N.D.C.C. § 27-10-01.4(1)(a). Having concluded that Bedgar's motion has merit, we reject Wilson's claim that he was entitled to attorney's fees and costs as a remedial sanction because Bedgar's motion was allegedly frivolous. Because we have reduced the amount of remedial sanctions the court originally awarded, we also remand to allow the district court to reconsider the amount of attorney's fees and costs awarded to Bedgar.

IV

[¶29] We affirm the district court's finding that Wilson was in contempt. We reverse the court's award of remedial sanctions and attorney's fees, and remand for further proceedings consistent with this opinion.

[¶30] Lisa Fair McEvers, C.J.
      Daniel J. Crothers
      Jerod E. Tufte
      Jon J. Jensen
      Douglas A. Bahr